## SECRETARY OF PUBLIC WELFARE OF PENN-SYLVANIA ET AL. *v.* INSTITUTIONALIZED JUVENILES ET AL.

No. 77–1715.   Argued October 10, 1978—Decided June 20, 1979

Burger, C. J., delivered the opinion of the Court, in which White, Blackmun, Powell, and Rehnquist, JJ., joined. Stewart, J., filed a statement concurring in the judgment, *post*, p. 650. Brennan, J., filed an opinion concurring in part and dissenting in part, in which Marshall and Stevens, JJ., joined, *post*, p. 650.

*Norman J. Watkins,* Deputy Attorney General of Pennsylvania, argued the cause for appellants. With him on the briefs were *Robert B. Hoffman,* Deputy Attorney General, and *Gerald Gornish,* Acting Attorney General.

*David Ferleger* argued the cause and filed a brief for appellees.*

Mr. Chief Justice Burger delivered the opinion of the Court.

This appeal raises issues similar to those decided in *Parham v. J. R., ante,* p. 584, as to what process is due when the parents or guardian of a child seek state institutional mental health care.

I

This is the second time we have reviewed a District Court's judgment that Pennsylvania's procedures for the voluntary admission of mentally ill and mentally retarded children to a state hospital are unconstitutional. In the earlier suit, five children who were between the ages of 15 and 18 challenged the 1966 statute pursuant to which they had been admitted to Haverford State Hospital. Pa. Stat. Ann., Tit. 50, §§ 4402, 4403 (Purdon 1969). After a three-judge District Court, with one judge dissenting, declared the statute unconstitutional, *Bartley v. Kremens,* 402 F. Supp. 1039 (ED Pa. 1975), the Pennsylvania Legislature amended its mental health code with regard to the mentally ill. The amendments placed

---

*Briefs of *amici curiae* urging affirmance were filed by *S. Shepherd Tate, John H. Lashly, Russell E. Webb,* and *Joseph F. Vargyas* for the American Bar Association; and by *Ronald M. Soskin* for the National Center for Law and the Handicapped et al.

adolescents over the age of 14 in essentially the same position as adults for purposes of a voluntary admission. Mental Health Procedures Act of 1976, § 201, Pa. Stat. Ann., Tit. 50, § 7201 (Purdon Supp. 1978). Under the new statute, the named plaintiffs could obtain their requested releases from the state hospitals independently of the constitutionality of the 1966 statute, and we therefore held that the claims of the named plaintiffs were moot. *Kremens* v. *Bartley,* 431 U. S. 119, 129 (1977). We then remanded the case to the District Court for "reconsideration of the class definition, exclusion of those whose claims are moot, and substitution of class representatives with live claims." *Id.,* at 135.

On remand, 12 new plaintiffs, appellees here, were named to represent classes of mentally ill and mentally retarded children. Nine of the children were younger than 14 and constituted all of those who had been admitted to the State's hospitals for the mentally ill in accordance with the 1976 Act at the time the suit was brought; three other children represented a class of patients who were 18 and younger and who had been or would be admitted to a state hospital for the mentally retarded under the 1966 Act and 1973 regulations implementing that Act. All 12 children had been admitted on the application of parents or someone standing *in loco parentis* with state approval after an independent medical examination.

The suit was filed against several named defendants, the Pennsylvania Secretary of Public Welfare and the directors of three state owned and operated facilities. The District Court, however, certified a defendant class that consisted of " 'directors of all mental health and mental retardation facilities in Pennsylvania which are subject to regulation by the defendant Secretary of Public Welfare.' " 459 F. Supp. 30, 40 n. 37 (ED Pa. 1978).[1]

---

[1] Appellants argue that the State's regulation of admission to private hospitals is insufficient to constitute state action for purposes of the Due Process Clause of the Fourteenth Amendment. They, however, did not

Representatives of the nine mentally ill children sought a declaration that the admission procedures embodied in § 201 [2] of the Pennsylvania Mental Health Procedures Act of 1976, Pa. Stat. Ann., Tit. 50, § 7201 (Purdon Supp. 1978), which subsequently have been expanded by regulations promulgated by the Secretary of Public Welfare, 8 Pa. Bull. 2432 et seq. (1978), violated their procedural due process rights and requested the court to issue an injunction against the statute's future enforcement. The three mentally retarded children presented the same claims as to §§ 402 [3] and 403 [4] of the

contest the District Court's definition of the defendant class, which included directors of both public and private facilities. In light of our holding that Pennsylvania's procedures comport with due process, we do not decide whether the District Court correctly found state action.

[2] Section 201 provides in part: "A parent, guardian, or person standing in loco parentis to a child less than 14 years of age may subject such child to examination and treatment under this act, and in so doing shall be deemed to be acting for the child."

[3] Section 402 provides:

"(a) Application for voluntary admission to a facility for examination, treatment and care may be made by:

. . . . .

"(2) A parent, guardian or individual standing in loco parentis to the person to be admitted, if such person is eighteen years of age or younger.

"(b) When an application is made, the director of the facility shall cause an examination to be made. If it is determined that the person named in the application is in need of care or observation, he may be admitted."

[4] Section 403 provides:

"(a) Application for voluntary commitment to a facility for examination, treatment and care may be made by:

. . . . .

"(2) A parent, guardian or individual standing in loco parentis to the person to be admitted, if such person is eighteen years of age or younger.

"(b) The application shall be in writing, signed by the applicant in the presence of at least one witness. When an application is made, the director of the facility shall cause an examination to be made. If it is determined that the person named in the application is in need of care or observation, he shall be committed for a period not to exceed thirty days."

Mental Health and Mental Retardation Act of 1966, Pa. Stat. Ann., Tit. 50, §§ 4402 and 4403 (Purdon 1969), and the regulations promulgated thereunder.[5]

The District Court certified two subclasses of plaintiffs [6]

---

[5] The 1973 regulations provide in part:

"1. . . . [M]entally retarded juveniles may be referred by either a pediatrician, or general physician or psychologist;

"2. This referral must be accomplished by a psychiatric evaluation and that report must indicate with specificity the reasons that the person requires institutional care; however, a medical or psychological evaluation may accompany the referral of a mentally retarded juvenile;

"3. The Director of the Institution . . . shall have conducted an *independent* examination of the proposed juvenile, and if his results disagree with the professional's opinion, the Director . . . shall discharge the juvenile;

.        .        .        .        .

"5. Within 24 hours after the juvenile's admission, every youth who is at least 13 years of age must receive written notification (which he signs) explaining his rights indicating that he will be given a status report periodically of his condition; that he can contact by telephone or by mail his parents or the person who requested his admission; and that he will be furnished with the number of counsel . . . that he can call for representation . . . ;

"6. In the event that a juvenile whose chronological age is 13 or older objects (either orally or in writing) to remaining in the Institution, the Director . . . *if he feels it is necessary for the youth to remain,* may continue the institutionalization for two business days during which time he shall notify the applicant and the referral unit so that either party may institute a 460 [involuntary commitment] proceeding. . . ." 3 Pa. Bull. 1840 (1973).

[6] One subclass consisted of "all juveniles under the age of fourteen who are subject to inpatient treatment under Article II of the 1976 Act." 459 F. Supp., at 41. The other subclass was "mentally retarded juveniles age eighteen or younger." *Id.,* at 42. Appellants argue that the District Court failed to heed our admonition in remanding this case previously that it should " 'stop, look, and listen' before certifying a class in order to adjudicate constitutional claims." *Kremens* v. *Bartley,* 431 U. S. 119, 135 (1977). Given our disposition of the merits of this appeal, we need not decide whether these subclasses satisfy the requirements of Fed. Rule Civ. Proc. 23.

under Fed. Rule Civ. Proc. 23 and held that the statutes challenged by each subclass were unconstitutional. It held that the State's procedures were insufficient to satisfy the Due Process Clause of the Fourteenth Amendment.

The District Court's analysis in this case was similar to that used by the District Court in *J. L. v. Parham*, 412 F. Supp. 112 (MD Ga. 1976), reversed and remanded *sub nom. Parham v. J. R., ante*, p. 584. The court in this case concluded that these children had a constitutionally protected liberty interest that could not be "waived" by their parents. This conclusion, coupled with the perceived fallibility of psychiatric diagnosis, led the court to hold that only a formal adversary hearing could suffice to protect the children in appellees' class from being needlessly confined in mental hospitals.

To further protect the children's interests, the court concluded that the following procedures were required before any child could be admitted voluntarily to a mental hospital:

1) 48-hour notice prior to any hearing;

2) legal counsel "during all significant stages of the commitment process";

3) the child's presence at all commitment hearings;

4) a finding by an impartial tribunal based on clear and convincing evidence that the child required institutional treatment;

5) a probable-cause determination within 72 hours after admission to a hospital;

6) a full hearing, including the right to confront and cross-examine witnesses, within two weeks from the date of the initial admission. App. 1097a–1098a.[7]

Appellants, all of the defendants before the District Court, appealed the judgment. We noted probable jurisdiction, and

---

[7] Judge Broderick dissented from the judgment of the majority. In his view, the majority "has prescribed 'an overdose' of due process." 459 F. Supp., at 53.

646

consolidated the case with *Parham* v. *J. R., ante,* p. 584. 437 U. S. 902.

II

(a) Much of what we said in *Parham* v. *J. R.* applies with equal force to this case. The liberty rights and interests of the appellee children, the prerogatives, responsibilities, and interests of the parents, and the obligations and interests of the State are the same. Our holding as to what process is due in *Parham* controls here, particularly:

> "We conclude that the risk of error inherent in the parental decision to have a child institutionalized for mental health care is sufficiently great that some kind of inquiry should be made by a 'neutral factfinder' to determine whether the statutory requirements for admission are satisfied. . . . That inquiry must carefully probe the child's background using all available sources, including, but not limited to, parents, schools, and other social agencies. Of course, the review must also include an interview with the child. It is necessary that the decision-maker have the authority to refuse to admit any child who does not satisfy the medical standards for admission. Finally, it is necessary that the child's continuing need for commitment be reviewed periodically by a similarly independent procedure." *Parham* v. *J. R., ante,* at 606–607.

The only issue is whether Pennsylvania's procedures for the voluntary commitment of children comply with these requirements.

(b) Unlike in *Parham* v. *J. R.,* where the statute being challenged was general and thus the procedures for admission were evaluated hospital by hospital, the statute and regulations in Pennsylvania are specific. Our focus here is on the codified procedures declared unconstitutional by the District Court.

The Mental Health Procedures Act of 1976 and regulations promulgated by the Secretary describe the procedures for the

voluntary admission for inpatient treatment of mentally ill children. Section 201 of the Act provides that "a parent, guardian, or person standing in loco parentis to a child less than 14 years of age" may apply for a voluntary examination and treatment for the child. After the child receives an examination and is provided with temporary treatment, the hospital must formulate "an individualized treatment plan . . . by a treatment team." Within 72 hours the treatment team is required to determine whether inpatient treatment is "necessary" and why. Pa. Stat. Ann., Tit. 50, § 7205 (Purdon Supp. 1978). The hospital must inform the child and his parents both of the necessity for institutional treatment and of the nature of the proposed treatment. *Ibid.*

Regulations promulgated under the 1976 Act provide that each child shall be re-examined and his or her treatment plan reviewed not less than once every 30 days. See § 7100.108 (a), 8 Pa. Bull. 2436 (1978). The regulations also permit a child to object to the treatment plan and thereby obtain a review by a mental health professional independent of the treatment team. The findings of this person are reported directly to the director of the hospital who has the power and the obligation to release any child who no longer needs institutional treatment.

The statute indeed provides three methods for release of a child under the age of 14 from a mental hospital. First, the child's parents or guardian may effect his release at will. Pa. Stat. Ann., Tit. 50, § 7206 (b) (Purdon Supp. 1978). Second, "any responsible party" may petition the juvenile court if the person believes that treatment in a less restrictive setting would be in the best interests of the child. *Ibid.* If such a petition is filed, an attorney is appointed to represent the child's interests and a hearing is held within 10 days to determine "what inpatient treatment, if any, is in the minor's best interest." *Ibid.* Finally, the director of the hospital may release any child whenever institutional treatment is no longer medically indicated. § 7206 (c).

The Mental Health and Mental Retardation Act of 1966 regulates the voluntary admission for inpatient hospital habilitation of the mentally retarded. The admission process has been expanded significantly by regulations promulgated in 1973 by Pennsylvania's Secretary of Public Welfare. 3 Pa. Bull. 1840 (1973). Unlike the procedure for the mentally ill, a hospital is not permitted to admit a mentally retarded child based solely on the application of a parent or guardian. All children must be referred by a physician and each referral must be accompanied by a medical or psychological evalution. In addition, the director of the institution must make an independent examination of each child, and if he disagrees with the recommendation of the referring physician as to whether hospital care is "required," the child must be discharged. Mentally retarded children or anyone acting on their behalf may petition for a writ of habeas corpus to challenge the sufficiency or legality of the "proceedings leading to commitment." Pa. Stat. Ann., Tit. 50, § 4426 (Purdon 1969).

Any child older than 13 who is admitted to a hospital must have his rights explained to him and must be informed that a status report on his condition will be provided periodically. The older child is also permitted to object, either orally or in writing, to his hospitalization. After such objection, the director of the facility, if he feels that hospitalization is still necessary, must institute an involuntary commitment proceeding under § 406 of the Act, Pa. Stat. Ann., Tit. 50, § 4406 (Purdon 1969).

What the statute and regulations do not make clear is how the hospital staff decides that inpatient care is required for a child. The director of Haverford State Hospital for the mentally ill was the sole witness called by either side to testify about the decisionmaking process at a state hospital. She described the process as follows:

"[T]here is an initial examination made by the psychiatrist, and is so designated as an admission note on the

hospital record. Subsequently, for all adolescents on the Adolescent Service at Haverford State Hospital, there are routine studies done, such as an electroencephalogram, a neurological examination, a medical examination, and a complete battery of psychological tests and school evaluation, as well as a psychiatric evaluation. When all their data has been compiled, an entire staff conference is held, which is called a new case conference, at which point the complete case is re-examined and it is decided whether or not the child needs hospitalization, and at that same time, as well, an adequate treatment course is planned." App. 112a.

In addition to the physical and mental examinations that are conducted for each child within the institutions, the staff compiles a substantial "pre-admission background information" file on each child.[8] After the child is admitted, there is a periodic review of the child's condition by the staff. His status is reviewed by a different social worker at least every 30 days. Since the State places a great deal of emphasis on family therapy, the parents or guardians are met with weekly to discuss the child's case. *Id.*, at 113a.

We are satisfied that these procedures comport with the due process requirements set out earlier. No child is admitted without at least one and often more psychiatric examinations by an independent team of mental health professionals whose

---

[8] Appellees argue that not much weight should be accorded to these files because the record does not make clear whether they were used in making the admission decision. The District Court, however, found that "virtually all of the information was received by the admitting facilities prior to admission." 459 F. Supp., at 36 n. 15. The court did acknowledge that it was not-clear to what extent the information was used, but nonetheless admitted all of the records into evidence. Since it was available, we, like the District Court, assume the information served as a factual basis for some portions of the diagnoses of the children at the time of their admission to the hospitals.

sole concern under the statute is whether the child needs and can benefit from institutional care. The treatment team not only interviews the child and parents but also compiles a full background history from all available sources. If the treatment team concludes that institutional care is not in the child's best interest, it must refuse the child's admission. Finally, every child's condition is reviewed at least every 30 days. This program meets the criteria of our holding in *Parham*.[9] Accordingly, the judgment of the District Court that Pennsylvania's statutes and regulations are unconstitutional is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

For the reasons stated in his opinion concurring in the judgment in *Parham* v. *J. R., ante,* p. 621, MR. JUSTICE STEWART concurs in the judgment.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL and MR. JUSTICE STEVENS join, concurring in part and dissenting in part.

For the reasons stated in my opinion in *Parham* v. *J. R., ante,* p. 625 (concurring in part and dissenting in part), I

---

[9] Although the District Court briefly described the situation of each of the children in appellees' class, it did not indicate the process for each of their admissions. We cannot determine on the record before us whether each child's admission conformed to our due process standards. Just as in *Parham,* individual members of appellees' class are free to argue on remand that their particular commitments violated those standards.

Also, we note that as in *Parham* we are faced only with the issue of what process is due at the initial admission, and thus we are not deciding what postadmission procedures are constitutionally adequate to continue a voluntary commitment. The District Court had no reason to consider that issue, and indeed from our reading of appellees' complaint there does not appear to be any specific challenge to the State's review procedures. However, we leave it to the District Court on remand to determine what further proceedings are necessary.

agree with the Court that Pennsylvania's preadmission psychiatric interview procedures pass constitutional muster. I cannot agree, however, with the Court's decision to pretermit questions concerning Pennsylvania's postadmission procedures. See *ante,* at 650 n. 9. In my view, these procedures should be condemned now.

Pennsylvania provides neither representation nor reasonably prompt postadmission hearings to mentally retarded children 13 years of age and younger. For the reasons stated in my opinion in *Parham* v. *J. R.* I believe that this is unconstitutional.

As a practical matter, mentally retarded children over 13 and children confined as mentally ill fare little better. While under current regulations these children must be informed of their right to a hearing and must be given the telephone number of an attorney within 24 hours of admission, see 459 F. Supp. 30, 49, 51 (ED Pa. 1978) (Broderick, J., dissenting),* the burden of contacting counsel and the burden of initiating proceedings is placed upon the child. In my view, this placement of the burden vitiates Pennsylvania's procedures. Many of the institutionalized children are unable to read, write, comprehend the formal explanation of their rights, or use the telephone. See App. 1019a (testimony of L. Glenn). Few, as a consequence, will be able to take the initiative necessary for them to secure the advice and assistance of a trained representative. Few will be able to trigger the procedural safeguards and hearing rights that Pennsylvania formally provides. Indeed, for most of Pennsylvania's institutionalized children the recitation of rights required by current regulations will amount to no more than a hollow ritual. If the children's constitutional rights to representation and to a fair hearing are to be guaranteed in substance as well as in form

---

*See also Pa. Stat. Ann., Tit. 16, § 9960.6 (c) (Purdon Supp. 1979) (Pennsylvania Public Defender obliged to represent institutionalized children in commitment and related proceedings).

and if the commands of the Fourteenth Amendment are to be satisfied, then waiver of those constitutional rights cannot be inferred from mere silence or inaction on the part of the institutionalized child. Cf. *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). Pennsylvania must assign each institutionalized child a representative obliged to initiate contact with the child and ensure that the child's constitutional rights are fully protected. Otherwise, it is inevitable that the children's due process rights will be lost through inadvertence, inaction, or incapacity. See 459 F. Supp., at 44 n. 47; *Bartley* v. *Kremens,* 402 F. Supp. 1039, 1050–1051 (ED Pa. 1975).