CHANCERY CLERK OF CHICKASAW COUNTY, MISSISSIPPI, et al., Defendants-Appellants,

v.

Robert WALLACE et al., Plaintiffs-Appellees.

No. 79–2323.

United States Court of Appeals, Fifth Circuit. Unit A

March 26, 1981.

Timmie Hancock, Jackson, Miss., for defendants-appellants.

Paul R. Friedman, Joseph F. Vargyas, Robert Plotkin, Mental Health Law Project, Washington, D. C., for plaintiffs-appellees.

## ON PETITION FOR REHEARING

Before COLEMAN, RUBIN and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The motion for rehearing is denied. The opinion for the Court in this case, slip opinion 3507, is withdrawn and the following opinion is substituted.

This case presents an interlocutory appeal from significant pretrial rulings in a class action challenging the constitutionality of Mississippi's procedures for the involuntary commitment of adults to state mental institutions.[1] The plaintiffs assert a § 1983 claim [2] for a declaratory judgment finding the civil commitment procedures violative of their fourteenth amendment due process rights.

At issue here is the trial court's denial of the defendant's motion to stay or to dismiss the suit. The defendants had urged the district court to terminate this suit on abstention grounds or, alternatively, taking

the relief requested to entail the release of persons from unconstitutional state confinement, on grounds that the plaintiffs failed to exhaust state remedies as § 2254(b) requires of habeas corpus petitioners.[3] This appeal raises for the first time the additional question whether plaintiffs chose "the real parties in interest" in suing as the defendants' class the chancery judges and clerks of the State of Mississippi. We affirm the trial judge's rulings on the abstention question and on the propriety of including confined persons among the plaintiff class bringing this § 1983 action, but remand for reconsideration of his decision to certify both plaintiff and defendant classes.

### Proceedings Below

In 1975, Robert Wallace, a Chickasaw County, Mississippi resident involuntarily confined at the time in the Mississippi State Hospital at Whitfield, brought suit purporting to represent all persons confined under Mississippi's allegedly unconstitutional civil commitment procedures.[4] He sued the Mississippi county judicial officials responsible for processing civil commitments.[5] By order dated March 11, 1976, District Judge Smith certified a plaintiff class consisting of three subclasses:

1. All persons who have been committed to Mississippi's state mental institutions in accordance with Mississippi's statutory procedure as set forth in Sections 41–21–5, –7, –9, –11, –13, and –15, Miss.Code

1. The challenged procedures are prescribed in Miss.Code Ann. §§ 41–21–61 *et seq.*, (Supp. 1980) amending Miss.Code Ann. §§ 41–21–5 *et seq.* (1972).

2. 42 U.S.C. § 1983 (1976) provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. 28 U.S.C. § 2254(b) (1976) provides:
   An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted

unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

4. Plaintiffs' Second Amended Complaint, filed March 11, 1976, alleges that both the pre- and post-1975 Mississippi statutes covering civil commitments are unconstitutionally vague, overbroad, and defective from a procedural due process standpoint.

5. Initially, the defendant class identified in plaintiffs' pleadings consisted only of chancery court clerks. The plaintiffs, in amended pleadings, expanded the defendant class to embrace chancery court judges as well.

Ann. (1972), and remain confined in Mississippi's state mental institutions,

2. All persons who have been committed to Mississippi's state mental institutions in accordance with Section 41–21–23, Miss.Code Ann. (1972) and remain confined in Mississippi's state mental institutions,

3. All persons who have been or may in the future be committed to Mississippi's state mental institutions in accordance with the new Mississippi statutory procedure as set forth in Sections 41–21–65 *et seq.*, Miss.Code Ann. (1975).

In early 1976, the defendants petitioned the trial court to abstain from proceeding with this action in light of other law suits pending in state and federal court challenging individual commitments on theories similar to those asserted by Wallace.[6] Alternatively, defendants moved to dismiss on the theory that, although the pleadings characterize the suit as a § 1983 declaratory judgment action, a habeas corpus action—with its attendant, unfulfilled exhaustion of remedies requirement—is the exclusive means of attacking the constitutionality of Mississippi's civil commitment scheme available to these plaintiffs. After rudimentary discovery and preliminary motions, Judge Smith held a hearing on the defendants' motions to dismiss on March 20, 1979. In a thoughtful bench opinion, he denied the defendants' motion and certified his rulings for review here under 28 U.S.C. § 1292(b) (1976).

### I. The Abstention Issue

Defendants question the correctness of the trial court's refusal to abstain. We review this contention by inquiring whether the trial court abused its discretion in declining to abstain. *See Harman v. Forssen-ius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965); *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 138–39 (5th Cir. 1980).

Defendants stress the fact that Mississippi's statutory scheme for involuntary civil commitments has never been authoritatively construed by Mississippi courts. Although the suits pending in federal and state courts when the motion to dismiss this suit was filed have subsequently withered, *see* n.6 *supra*, defendants point out that the named representatives of the plaintiff class and any other persons subjected to commitment proceedings could challenge the scheme in state court. Thus, extracting language favorable to their position from distinguishable prior decisions, defendants insist the trial court erred in refusing to invoke *Pullman* abstention. *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

We disagree. *Pullman* abstention presupposes two conditions: "(1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). We doubt that either condition exists here. The defendants do not particularize their claim that state court construction of an unsettled statutory provision may obviate the need for federal constitutional adjudication. They do not point to any ambiguous aspect of the civil commitment scheme that, by a narrowing judicial construction, might be saved from possible invalidation. Instead, they urge abstention in consideration of the prospect that Mississippi courts may find all or part of the commitment scheme violative of the Mississippi constitution.[7]

---

**6.** At the March 20, 1979 hearing before Judge Smith, defendants' attorney reported that the suit in federal court had been dismissed and that the state proceedings appeared moot because the plaintiffs in those cases had been released from confinement.

**7.** The Sixth Circuit recently upheld a trial judge's decision to invoke *Pullman* abstention on essentially this same theory. *Kasap v. Moritz*, 613 F.2d 138 (6th Cir. 1980). We are no more persuaded by the trial judge's reasoning in *Kasap* than we are bound by the Sixth Circuit's decision allowing it to stand. By deferring judgment in light of the possibility that a Mississippi court will find a conflict between the civil commitment scheme and the broad reach of the Mississippi constitution's due process clause, we "would convert abstention from an exception into a general rule." *Examining Bd. of Engineers v. Flores De Otero*, 426

There appears to be neither ambiguity in the challenged statutory provisions nor doubt about how they operate in practice. The only uncertainty surrounding the scheme is whether it violates the due process rights of persons facing commitment proceedings. Federal courts should abstain when state courts can, by definitive construction, confine the statute within constitutional limits. But that opportunity does not appear to present itself in this case. The federalism interest underlying *Pullman* abstention—the reluctance to interject an unnecessary constitutional ruling into an ambiguous state law question—is absent here.

Further, *Pullman* abstention is required only when an alternative state forum is available for resolution of the complaint. *See Texas Railroad Commission v. Pullman*, 312 U.S. at 501, 61 S.Ct. at 645. The pending state court suits cited in defendants' motion to dismiss as alternative state vehicles for resolving this controversy have since become moot. *See* n.6 *supra*. Moreover, while we perceive some defects in the definition of the certified classes, *see* Part III, *infra*, we understand that, given the reluctance of Mississippi courts to countenance class actions at all,[8] the mounting of a similar challenge offering the promise of comparable relief from a state court may be unworkable. Therefore, we doubt the fea-

sibility of resolving the issues presented by this lawsuit in a Mississippi court.

Even assuming the availability of an alternative forum for resolution of these issues in a state court, we see no basis for requiring *Pullman* abstention. Further, the lack of an ongoing state proceeding renders *Younger* abstention likewise inapplicable.[9] We certainly cannot say that the trial court abused its discretion in declining to abstain.

## II. Habeas Corpus versus Section 1983 Relief

■ Two of the three plaintiff subclasses certified by the trial court are composed of persons involuntarily confined in Mississippi mental institutions. These confinements are the product of state court judgments reached through procedures here asserted to be unconstitutional. Specific challenges to the constitutionality of confinement in state institutions fall within the ambit of habeas corpus procedures, 28 U.S.C. § 2254(a). This statutory provision requires that state remedies must be exhausted before release from confinement can be considered by the federal court.

■ There has been no exhaustion of state remedies by the plaintiffs in this case. An essential inquiry, therefore, is whether this challenge to the procedures for commitment of individuals to state mental institutions is a challenge to the legality of the

---

U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976).

**8.** Judge Smith's bench opinion notes that, in Mississippi, "the state statutes and the state procedure do not recognize the right of a person to bring a class action.... There is no way to get that kind of suit into the state courts." Unpublished transcript of bench opinion at 11. *But see* Miss.Code Ann. § 11–53–37 (1972) (allowing Mississippi courts to award attorney's fees from the common fund generated in a class suit); Miss.Code Ann. § 75–24–15(3) (1980 Supp.) (provision expressly prohibiting consumer class actions, thereby implying availability of the class action mechanism).

Mississippi Supreme Court decisions lend support to this assessment. *See Evans v. Progressive Casualty Ins. Co.*, 300 So.2d 149, 152 (Miss.1974) ("[C]lass actions go against the grain of 'due process' and 'equal protection of the law.' Rules applicable to such actions must therefore, not be broadened or relaxed

but applied with consistency."); *Barrett v. Coullet*, 263 So.2d 764 (Miss.1972). *See also Thompson v. Anding*, 370 So.2d 1335 (Miss. 1979) (denying class status to property owners' suit seeking reassessment of school tax liability and refunds); *Bradley v. State*, 355 So.2d 675 (Miss.1978) (affirming dismissal of purported class action on behalf of Mississippi prisoners in work-release program); *Liddell v. Litton Systems, Inc.*, 300 So.2d 455 (Miss.1974) (denying class status to suit for usury penalties on behalf of borrowers from defendant's credit union).

**9.** *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

"[C]onsiderations of . . . comity in our federal system . . . have little force in the absence of a pending state proceeding." *Lake Carriers Ass'n. v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972).

confinements as such. If so, a § 1983 suit claiming civil rights violations does not lie. Such suits must be brought under § 2254(a), and without the exhaustion of state remedies there is no standing to bring suit by those who are at present confined in state mental institutions.

In resolving this issue, we start with *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). There prisoners challenged the procedures under which good-conduct-time credits had been denied, and asked that certain good-conduct-time credits be restored. The Supreme Court held that a § 1983 suit would not lie because the additional good-conduct-time credits sought would automatically have resulted in the immediate release of some prisoners and the accelerated release of others. The Court concluded that such a precise effect on the "duration" of confinement requires proceeding by the habeas corpus route. In the same case, however, the Court recognized that a § 1983 proceeding would lie, without the exhaustion of state remedies, if civil rights violations were claimed against the conditions under which confinement was maintained rather than the duration of confinement itself.

A year later, in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that prisoners could use a § 1983 proceeding asking for damages and an injunction to challenge the procedures under which good-conduct-time credits were granted and to fashion remedies short of awarding such credits. The Court accepted *Preiser* as properly prohibiting a suit to restore good-conduct credits without exhaustion of state remedies. The Court held, however, that under § 1983 a judgment could go so far as to expunge improper disciplinary records although this might in turn lead to restoration of good-conduct-time credits. Removing improper instances of discipline from the records would not automatically entitle anyone to be released from confinement. Prisoners

would have to go through other procedures to get good-conduct-time credits restored.

This Court gave full consideration to the implications of *Preiser* and *Wolff* in two companion cases which involved challenges to criminal convictions based upon serious procedural errors. *Fulford v. Klein*, 529 F.2d 377 (5th Cir. 1976), was a § 1983 suit for damages against the prosecutor charging that exculpatory evidence had been withheld at the trial. *Meadows v. Evans*, 529 F.2d 385 (5th Cir. 1976), was a § 1983 suit for damages challenging the voluntariness of plaintiff's plea of guilty. In both cases this Court held that these suits fell under § 2254(a) as proceedings in the nature of habeas corpus and that, since there had not been exhaustion of state remedies, the Court had no jurisdiction.[10] This Court has continued to follow scrupulously the rule that a challenge to a conviction in a criminal case, even though civil rights claims are made, must be brought under § 2254(a) and state remedies must be exhausted. *See Delaney v. Giarrusso*, 633 F.2d 1126 (5th Cir. 1981); *Robinson v. Richardson*, 556 F.2d 332 (5th Cir. 1977).

In *Meadows*, the Court opinion stated that in a prisoner's action which "asks for relief or raises issues which go directly to the constitutionality of his conviction or confinement", 529 F.2d at 368, state remedies must be exhausted, even though civil rights claims are made. The Court then confirmed the basic distinction made in *Preiser* that a challenge to the conditions of the confinement rather than to the validity of the confinement itself is subject to § 1983 proceedings without exhaustion of state remedies.

Other Supreme Court cases have continued to delineate the distinction between actions to obtain release from confinement and civil rights actions which challenge the constitutionality of procedures but where a decision of unconstitutionality does not of

---

**10.** Both cases were affirmed en banc, *Fulford* at 550 F.2d 342 (5th Cir. 1977), and *Meadows* at 550 F.2d 345 (5th Cir. 1977), by brief per curiam opinions which adopted the panel opin-

ions. The United States Supreme Court denied certiorari in *Meadows v. Evans*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977).

itself entitle the person in confinement to be released. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court allowed a § 1983 challenge to pre-trial custody procedures of prisoners under indictment or information since "release was neither asked nor ordered," *id.* at 107, n.6, 95 S.Ct. at 859, n.6. The Court again spoke in an analogous situation in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). This case involved an appeal from the lower court decision which had held Nebraska's parole procedures unconstitutional in a § 1983 civil rights challenge. The Supreme Court reversed the trial court on the merits, upholding the parole procedures. But the Court allowed the § 1983 challenge without exhaustion of state remedies because the declaration that procedures were unconstitutional would not automatically lead to the release of those confined. This Court had already made the same holding in *Williams v. McCall*, 531 F.2d 1247 (5th Cir. 1976), distinguishing cases such as *Cruz v. Skelton*, 502 F.2d 1101 (5th Cir. 1974), where the prisoner in the § 1983 proceeding challenged the fact that he had not been paroled and where the court had properly held that § 2254(a) was the exclusive remedy.

■ When the prisoners in *Fulford* and *Meadows* claimed that their criminal convictions had been obtained in violation of their civil rights, inescapably they were asking for release from confinement. There would be no authority under which a person serving a term in a prison resulting from a criminal conviction could be retained in custody under that conviction once there was an authoritative determination that the conviction could not stand. In contrast, there can be no absolute right to be released from confinement in a mental institution for a person found to have been committed under procedures which violate the inmate's civil rights. Equating the invalidity of a criminal conviction with a finding that involuntary commitment procedures are invalid overlooks a salient and controlling consideration. A criminal conviction results in a final and settled binding judgment. Confinement of those who are victims of mental illness is not a final and binding event; it is part of a process. There is no sentence and there is no specific duration of confinement. A person who has been involuntarily confined for mental illness is entitled to release when he or she is no longer mentally ill. The law also recognizes there can be confinements of the mentally ill under the most summary procedures when it is necessary to protect a person from self injury or injury to others.

■ An action brought by those who are confined in a mental institution to challenge the procedures under which they were confined is not a suit which asks or, if successful, would result in automatic release from confinement. It is a suit which seeks no more than a finding that current procedures are invalid and that Mississippi should now apply civil commitment procedures which pass constitutional muster. In this case, plaintiffs clearly recognize these considerations by asking only for a declaratory judgment that the current commitment procedures are unconstitutional. They do not ask for release if the procedures are invalid. They ask only an opportunity for a reconsideration of confinement if the procedures are found to be in violation of their civil rights.

It follows that the members of the subclasses who are at present involuntarily confined in state mental institutions are entitled to bring this proceeding under § 1983 to claim that because of unconstitutional procedures their continued confinement is a violation of their civil rights. They are not asking for immediate release from confinement, and they would not be entitled to such immediate release even if they prevailed.

This conclusion is confirmed by two recent cases decided by the United States Supreme Court. *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), and *Secretary of Public Welfare of Pennsylvania v. Institutionalized Juveniles*, 442 U.S. 640, 99 S.Ct. 2523, 61 L.Ed.2d 142 (1979), both involved appeals from three-judge federal courts which had found un-

constitutional the procedures of Georgia and Pennsylvania for the commitment of juveniles to mental institutions. The suits were brought under § 1983, and there had been no exhaustion of state remedies. On appeal, the United States Supreme Court reversed both cases on the merits, finding the state procedures adequate for the commitment of juveniles to mental institutions.

The critical aspect of these decisions for purposes of resolving the issue of the right to challenge commitment procedures under § 1983 is found in the fact that neither three-judge Federal District Court nor the United States Supreme Court cast any doubt upon the procedural validity of the § 1983 challenges. Section 2254(a) was not even mentioned in any opinion. Yet the issue obviously is a jurisdictional one, and it is elementary that a Court is obliged to notice an issue of jurisdiction on its own motion. *City of Kenosha v. Bruno*, 412 U.S. 507, 511–14, 93 S.Ct. 2222, 2225–27, 37 L.Ed.2d 109 (1973); Fed.R.Civ.P. 12(h)(3).[11]

What the plaintiffs ask in this case is a constitutional evaluation under § 1983 of the procedures under which they were committed to state mental institutions and under which they are now held in state mental institutions. If constitutional defects in such procedures are found, then by virtue of the declaratory judgment which plaintiffs seek, each confined class member would become entitled to a review of his ongoing confinement under corrected procedures. If the District Court finds aspects of the Mississippi commitment procedures unconstitutional, it can suggest the basic constitutional requirements which must be met in dealing with involuntary confine-

ment in mental institutions.[12] If the appropriate legislative body does not within a reasonable time provide such procedures the District Court may entertain applications for relief.

Therefore, we conclude that those now involuntarily confined to the state mental institutions may challenge the constitutionality of the state commitment procedures under 42 U.S.C. § 1983 and that the subclasses of confined persons certified by the trial court are valid.

### III. Proper Parties
#### A. The Plaintiff Class

The defendants raise the question whether this lawsuit presents an Article III "case or controversy" over which the trial court may properly assert jurisdiction. The chancery judges and clerks note that the plaintiff class is divisible into two groups: (1) persons confined involuntarily—in which case habeas corpus provides their exclusive remedy—or (2) persons with, at most, a speculative fear of being committed or recommitted to a mental institution. The defendants argue that both groups lack Article III standing to bring this § 1983 suit.

■ As our discussion in Part II, *supra*, indicates, we find that habeas corpus is not the exclusive remedy available to the confined members of the plaintiff class. Thus, they have standing to bring this § 1983 action. Moreover, although all formerly confined class representatives may have been subsequently discharged from state custody, the confinement of a single class representative at the time the trial court certified the plaintiff class [13] insulates the

---

11. A three-judge federal district court has written specifically upon the issue of a § 1983 right to challenge commitment procedures by adults now in confinement in mental institutions. *Goldy v. Beal*, 429 F.Supp. 640 (M.D.Pa.1976), reached the same conclusion the Supreme Court reached in *J.R.* and we reach here that the challenge to commitment procedures does not involve automatic release from confinement for mental illness. Section 1983 suits have also been accepted by the courts in cases of the criminally insane challenging procedures under which they were committed either after

acquittal by reason of insanity, *Dorsey v. Solomon*, 604 F.2d 271 (4th Cir. 1979), or having been committed as not mentally capable to stand trial, *Gomez v. Miller*, 341 F.Supp. 323 (S.D.N.Y.1972), *aff'd without opinion*, 412 U.S. 914, 93 S.Ct. 2728, 37 L.Ed.2d 141 (1973).

12. *See e. g., Goldy v. Beal*, 429 F.Supp. 640 (M.D.Pa.1976).

13. Judge Smith's order certifying this suit as a class action issued on March 11, 1976. It is undisputed that named representatives of the

controversy from mootness. *Sosna v. Iowa,* 419 U.S. 393, 400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975). *See also Cruz v. Hauck,* 627 F.2d 710, 717 (5th Cir. 1980). Even if all named class representatives are free from confinement at the present time, the certified class includes confined persons with a personal stake in obtaining review of their commitments under procedures that comport with due process standards.[14]

■ Finding a live Article III controversy with respect to the certified subclass of confined plaintiffs, we examine the propriety of the subclass consisting of persons subject to commitment or recommitment in the future. Defendants question whether the plaintiff subclass represented by persons with histories of prior civil commitments who fear recommitment can show a sufficiently concrete threat of injury to present justiciable controversy. Specifically, they derive support from *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), where black indigent citizens of a community "boiling with racial conflicts," *id.* at 507, 94 S.Ct. at 681 (Douglas, J., dissenting) were found to lack the requisite "real and immediate" threat of injury necessary to press justiciable claims of racially discriminatory conduct by local law enforcement officials. *Cf. Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969) (to pose an Article III controversy, plaintiffs' asserted threat of injury must be "real and immediate," not "conjectural" or "hypothetical").

We find a closer analogy in *Coll v. Hyland,* 411 F.Supp. 905 (D.N.J.1976). There, the three-judge court considering a § 1983 suit challenging New Jersey's civil commitment procedures found a former mental patient's history of mental illness enhanced the probability of recommitment sufficiently to demonstrate a "real and immediate" threat of injury. *Id.* at 907–08. *See also In re Balley,* 482 F.2d 648, 652 n.13 (D.C.Cir. 1973) (court rejects argument that former mental patient's claim was mooted by release, noting that adjudication of mental incompetence gives rise to ongoing injurious presumption of continuing incompetence).

Since the trial court's order does not provide any detailed factual findings or legal analysis explaining its implied determination that a justiciable Article III controversy exists with respect to the plaintiffs who fear future confinement or reconfinement, we cannot tell whether the determination is correct. But, at this interlocutory stage of the proceedings, we certainly cannot say that a live controversy does not exist as to this plaintiff subclass. On remand, as the composition of the defendant class undergoes redefinition, the trial court should review its earlier certification of this plaintiff subclass in light of the applicable Article III standards we have discussed here.

### B. The Defendant Class

Finally, we turn to the defendants' contention that, as chancery judges and clerks, they "are not the real parties in interest" in this lawsuit. As judicial officers following statutory procedures designed by the state legislature, the defendants contend they are not the governmental officials responsible for correcting constitutional deficiencies in Mississippi's civil commitment system. Significantly, this objection to the plaintiffs' choice of defendants was not raised until this appeal.

---

plaintiff class were confined in Mississippi mental institutions on that date.

**14.** The frequently brief duration of civil commitments may well bring this controversy within the class of cases described in *Gerstein v. Pugh,* 420 U.S. at 110 n.11, 95 S.Ct. at 861 n.11: It is by no means certain that any given individual, named as plaintiff, would be in ... custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case. *Quoted in United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 492 (1980).

■ Defendants' argument is couched in the terminology of Fed.R.Civ.P. 17(a).[15] Their argument is advanced as raising issues concerning the Article III constitutional requirement. On the other hand, plaintiffs undertook to bring suit against government officials of the State of Mississippi enforcing and applying the Mississippi commitment procedures. This is the class of defendants which plaintiff endeavored to create. The purpose of the suit is clear, and the purpose of the creation of a class of government officials applying and enforcing the statute is clear. The plaintiffs' only error was in naming officials who are in a position to claim they had no personal stake in the outcome.

Because of the judicial nature of their responsibility, the chancery clerks and judges do not have a sufficiently "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *Cf. Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976) (state court judges and clerks joined as defendants in a suit challenging New York's durational residence requirement for divorce found to lack the requisite interest in defending the allegedly unconstitutional statutes). On remand, plaintiffs will have the opportunity to correct this error by substituting as defendants the Mississippi officials with executive responsibility for defending the challenged civil commitment procedures.

■ We perceive neither an Article III problem nor any unfairness to the proper parties defendant in substituting them at this stage of the litigation. Plaintiffs' misidentification of the appropriate defendants may be corrected by amendment to the pleadings substituting as defendants those state officials with the requisite "personal stake" in defending the state's interests under Fed.R.Civ.P. 15(a). The United States Code, Title 28, § 1653 even allows amendments to pleadings to correct defective jurisdictional allegations "after judgment has been entered or an appeal taken." *Eklund v. Mora*, 410 F.2d 731, 732 (5th Cir. 1969), *citing Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953). To regard the plaintiffs' selection of the wrong governmental officials in mounting this suit as anything more than a remediable pleading defect—especially in view of the defendants' failure to raise it until this appeal—would be to elevate form over substance. *Cf. Neal v. State of Georgia*, 469 F.2d 446 (5th Cir. 1972) (reversing trial court's dismissal of a prisoner's pro se § 1983 complaint on the merits even though the only named defendant in the complaint was immune from suit; case remanded to allow the plaintiff to name proper defendants and to pursue his claim on the merits); *Harms v. F. H. A.*, 256 F.Supp. 757 (D.Md.1966) (giving plaintiff leave to amend his complaint to name the appropriate governmental defendant and to take advantage of available waiver of sovereign immunity and federal court jurisdiction).

It is well to note that the Attorney General of the state has been representing the interests of the state throughout. He has been free to present and has presented contentions and argument on behalf of the state and its officials at every step in this

---

**15.** Fed.R.Civ.P. 17(a) provides:

*Real Party in Interest.* Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

case. No prejudice to the state's interests has been shown at this intermediate stage of the proceedings.

## CONCLUSION

To summarize, we affirm the trial court's refusal to abstain and we determine that the confined plaintiff subclasses may continue to participate in this § 1983 action. We vacate the trial court's certification of the defendant class and remand for further proceedings in the trial court: (1) to determine whether former mental patients who fear reconfinement constitute a cognizable class; and (2) to offer the opportunity to plaintiffs to substitute the proper public officials as defendants. Costs will not be taxed at this time because of the nature of this interlocutory appeal. Costs will be taxed by the district court upon final judgment.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.