2 A.3d 1201

**In the Interest of F.C. III, a Minor.**

**Appeal of F.C., III.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 2009.

Decided Aug. 17, 2010.

48

52

Jennifer Kres Pokempner, Juvenile Law Center, William Roy Crum, Marsha Levick, for F.C., III.

Lynn Reddick, for Allegheny County Department of Human Services.

Zygmont A. Pines, Administrative Office of Pennsylvania Courts, for Administrative Office of Pennsylvania Courts.

Thomas W. Corbett, Jr., and Kemal A. Mericli, for the Pa. Office of Attorney General.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

*OPINION*

Justice TODD.

We granted allowance of appeal in order to consider whether 71 P.S. § 1690.112a ("Act 53")[1] of the Pennsylvania Drug and Alcohol Abuse Control Act,[2] which permits a parent or guardian to petition for civil involuntary commitment of their drug dependent child to a drug and alcohol treatment program, violates the due process protections provided by the Fourteenth Amendment to the United States Constitution.[3] For the reasons set forth below, we reject this constitutional challenge and hold that Act 53 does not violate our federal charter. Thus, we affirm the order of the Superior Court.

By way of background, C.K., Appellant F.C.'s grandmother, has had custody of Appellant since he was 4–years–old. In 2007, when Appellant was 14–years–old, Appellant's grandmother was attempting to deal with the challenges of Appellant's regular drug use, stealing, truancy from school, and his running away from home. Unable to maintain control of her grandson, and in an attempt to address this situation, on May 30, 2007, C.K. filed a petition pursuant to Act 53 to compel Appellant to receive drug and alcohol abuse treatment on an involuntary basis. That same day, the Honorable Guido A. DeAngelis of the Court of Common Pleas of Allegheny County, Juvenile Court, entered a preliminary order appointing counsel for Appellant and ordered him to undergo a drug and alcohol assessment by a licensed drug addiction counselor. The juvenile court also directed Appellant to appear for a hearing scheduled for June 12, 2007, and required C.K. to provide Appellant with a copy of the petition and the order of the court.

Although it is not clear from the record, evidently, due to her inability to maintain control of Appellant, C.K. requested

1. Act of Nov. 26, 1997, P.L. 501, No. 53, § 3 (amending the Pennsylvania Drug and Alcohol Abuse Control Act).

2. Act of April 14, 1972, P.L. 221, No. 63, § 1 (as amended 71 P.S. § 1690.101 *et seq.*).

3. U.S. Const. amend. XIV.

54

assistance in securing Appellant's attendance at the hearing on her petition. On June 12, 2007, Allegheny County Sheriff's deputies took custody of Appellant at his home and transported him to juvenile court for attendance at the hearing. The sheriff's deputies delivered Appellant to a secured area within the juvenile court facility, where he was held in an area which was not occupied by adults or other juveniles who were charged with delinquent activities. Appellant was interviewed by Josie Morgano, a certified addiction counselor, and was then taken to the courtroom.

At the hearing before Judge DeAngelis, Appellant's counsel raised the constitutionality of Act 53 with regard to the petition and assessment process as well as Appellant being shackled. After discussion of these preliminary matters, Morgano testified, *inter alia,* that Appellant told her that he smoked marijuana every day and sometimes used alcohol, and had been doing so for one year. Furthermore, Morgano offered that the 14–year–old had a history of outpatient mental health treatment, had been truant at school, had run away from home, had stolen money from his grandmother, and had been very difficult to contain in the home environment. This testimony was based upon Morgano's interview with Appellant as well as information provided by Appellant's grandmother. According to Morgano, Appellant's diagnosis was cannabis dependence, and she did not believe it was possible to contain Appellant in the home environment and have outpatient assistance. She therefore recommended inpatient therapy for Appellant's drug dependence. Appellant's counsel cross-examined Morgano during the hearing.

Based upon this testimony, the juvenile court granted C.K.'s petition and ordered Appellant to receive inpatient treatment for marijuana dependency with a review scheduled within 45 days. Thereafter, Appellant was taken to an inpatient drug treatment facility. On July 10, 2007, Appellant filed a notice of appeal challenging the constitutionality of Act 53 and a motion for an evidentiary hearing, which was denied. Two weeks later, on July 24, 2007, the court conducted a hearing to review Appellant's commitment. After receiving evidence re-

garding the positive progress of Appellant's inpatient treatment, the juvenile court determined that it was in Appellant's best interest to remain committed to the same inpatient program for an additional two to three weeks.

On December 21, 2007, the juvenile court rendered an opinion supporting its prior decision to require Appellant to receive inpatient drug treatment and upholding the constitutionality of Act 53. Specifically, after recognizing the strong presumption that legislative actions do not offend the Constitution, the court noted that, while children share many constitutional protections afforded adults, it is the court's mandate to act in the best interest of the child. The court also noted that there is a difference between civil and criminal proceedings. In light of the dearth of caselaw analyzing Act 53, the juvenile court looked to the Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7101–7503. The court explained that, consistent with the purposes behind both statutes to immediately treat those suffering from medical maladies, both statutes provided sufficient due process protections. Based upon this reasoning, the court rejected Appellant's challenges to Act 53 and his treatment.

On appeal, a unanimous panel of the Superior Court, in an opinion authored by the Honorable Robert Colville, upheld the constitutionality of Act 53. *In the Interest of: F.C.*, 966 A.2d 1131, 1137–38 (Pa.Super.2009). The court addressed Appellant's contentions that he was denied due process and his right to counsel when, based solely on the Act 53 petition, he was detained, subjected to an assessment in which, in order to test the allegations in the petition, he was compelled to divulge private information without being given notice and an opportunity to be heard; he was assessed without counsel present; he was denied due process by virtue of his restraint in shackles; and his right to counsel was infringed because, held in restraints, he could not communicate with counsel. *Id.* at 1133.

In resolving these challenges, the Superior Court, *inter alia*, turned to the involuntary commitment provisions of the MHPA for guidance. The court first examined Section 7302 of the MHPA, which allows a county administrator to issue a

warrant requiring a person to undergo an involuntary emergency examination at a treatment facility and directing a peace officer to take such person to the facility specified in the warrant. The court observed the warrant may issue under Section 7302 upon reasonable grounds that the person is severely mentally disabled[4] and in need of immediate treatment. The court further referenced that, after he is transported to the specified facility, the person is subject to an examination by a physician. Depending on the results of the examination, the person is either discharged or treated. If treated, the person may not be held involuntarily for more than 120 hours unless, upon application, the trial court orders extended involuntary treatment. The Superior Court further detailed that, if an application for extended involuntary treatment is filed, the trial court then appoints counsel for the person, and, within 24 hours of the filing of the application, an informal hearing is held. The informal hearing may result in extended treatment which, at that point, may not exceed 20 days.

The Superior Court noted that the initial infringement of liberty, when the person is transported to a treatment facility, subjected to an involuntary assessment, and, then, a possible informal hearing for a 20–day period, takes place with minimal due process protections. Nevertheless, the Superior Court recognized that the process has been found to be constitutionally sound pursuant to our decision in *In Re: J.M.*, 556 Pa. 63, 726 A.2d 1041 (Pa.1999), in light of the therapeutic/non-punitive intent and short duration of the Section 7302 procedures.

The court next compared the procedures of Sections 7302 and 7303 of the MHPA with those of Act 53 and highlighted their similarities. Among other things, the court referred to the likeness between the provision in Section 7302, calling for a warrant to be issued after reasonable grounds are presented to a court, and Act 53's provision calling for an order to be issued after "sufficient facts and good reason" are presented

4. As defined in Section 7301(a), the term "severely mentally disabled" essentially means the person, as a result of mental illness, poses a clear and present danger to himself or others. 50 P.S. § 7301(a).

by petition to the court. 71 P.S. § 1690.112a(a). Additionally, the court explained, just as the MHPA provides increasing constitutional protections as the person is subjected to continuing and increased periods of commitment, Act 53 provides for ongoing hearings if the court wishes to recommit the minor to treatment.

In light of the foregoing, the Superior Court was persuaded that the MHPA and Act 53 "serve similar purposes through similar steps with similar constitutional protections." *In the Interest of: F.C.*, 966 A.2d at 1137. The court reasoned that, just as the MHPA survived constitutional scrutiny, so did Act 53. While recognizing that the legislative enactments were not mirror images, the Superior Court nevertheless found them to be sufficiently analogous to conclude that Act 53 was constitutional. *Id.* at 1137–38. The court explained that the procedures under Act 53 were fundamentally fair and provided constitutionally adequate protections for minors subject thereto, particularly given Act 53's important goal of facilitating treatment for drug-dependent minors, and given the dangers posed to minors and those around them when those minors abuse drugs. The prerequisite of a court-ordered assessment conducted by a psychiatrist, licensed psychologist, or certified addiction counselor; the appointment of counsel; an in-court hearing requiring clear and convincing evidence prior to involuntary commitment; and the provision of ongoing review prior to recommitment all underscored the protections afforded to minors under Act 53. Thus, the Superior Court rejected Appellant's claim that he was denied due process or his right to counsel.

The Superior Court also denied Appellant's contention that he was denied due process by virtue of his restraint prior to and during his hearing, specifically, claiming that the visible restraints rendered his hearing unfair and that the restraints were improper as the proceedings are civil in nature. The court offered that, while, generally, due process guarantees defendants the right to appear in court free of restraints, defendants may be restrained to prevent escape and to protect others and maintain order in the courtroom. Here, the Supe-

rior Court reasoned, the proceedings did not involve a jury, but a judge. Furthermore, the court believed that the hearing would only last five to ten minutes, and it was in fact relatively brief. Therefore, the Superior Court concluded that Appellant did not establish that his constitutional rights were violated by his wearing restraints before the judge. Moreover, the court expressed its concern that Appellant was a flight risk, and Appellant was known to run away from home. In light of these circumstances, the Superior Court found that keeping Appellant restrained did not infringe his due process rights. Related thereto, the Superior Court rejected Appellant's assertion that his restraints impeded his ability to communicate with counsel, as the record disclosed that Appellant and counsel were able to freely communicate. Based upon the foregoing, the Superior Court affirmed the juvenile court's order and denied Appellant's challenges thereto. Appellant appealed to our Court.

On July 13, 2009, we granted allocatur on the issue of whether Act 53 violates due process protections provided by the 14th Amendment to the United States Constitution or Article I, Section 1 of the Pennsylvania Constitution.[5]

In resolving this issue, we first consider the contentions of the parties. Appellant raises facial challenges to Act 53, asserting that the statute is void on due process grounds. Specifically, Appellant initially argues that the lower tribunals' reliance on an analysis of the involuntary commitment provisions under the MHPA is misplaced and cannot serve as a substitute for a due process analysis of the specific statute challenged. Moreover, Appellant maintains that, while the MHPA and Act 53 share a purpose of providing treatment to individuals in need, the MHPA permits forced confinement and treatment not of mentally ill persons, but of mentally ill persons that pose a clear danger to themselves or others. He claims that, at its core, it is the threat of harm that justifies the involuntary confinement, not simply the mental illness. Act 53 does not require the threat of harm to others or self as a

5. Our Court has jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 724(a).

core prerequisite for involuntary treatment. Appellant asserts that less evidence of necessity is required to justify involuntary treatment under Act 53 than the MHPA, yet fewer procedural protections are provided to children subject to Act 53 than to individuals subjected to involuntary treatment under the MHPA.

According to Appellant, the MHPA provides checks at each stage of the examination and commitment process that make it constitutionally sound, but which are absent from Act 53. Specifically, while an emergency examination may be made under the MHPA only upon a showing of immediate need for treatment, under Act 53, initiation of proceedings requires only "sufficient facts and good reason for the commitment." 71 P.S. § 1690.112a(a). Likewise, Appellant advances the position that, under Act 53, minors may be involuntarily committed without any evidence of specific conduct within the preceding 30 days indicating the need for involuntary treatment; minors may be involuntarily committed for up to 45 days even though not all of the criteria for commitment have been established by clear and convincing evidence; and, while the court is required to find that the minor will benefit from involuntary treatment services, there is no standard of proof by which the court is to make this finding. Moreover, Appellant maintains that minors may be committed for unlimited successive 45–day periods with few procedural safeguards; minors have no right to be released by the facility or treatment program as soon as the director determines that treatment is no longer necessary; minors have no right to the assistance of an independent medical expert; and minors have no right to be committed only on the basis of a medical determination regarding the need for involuntary treatment. Related thereto, Appellant avers Act 53 is unconstitutional insofar as it fails to require that minors be committed to the least restrictive placement setting that also meets their treatment needs. At a minimum, he claims that, where, in the view of qualified professionals, the best means of meeting an individual's need for treatment dictates community placement,

institutionalization contrary to that professional judgment violates that individual's due process rights.

Next, Appellant contends that Act 53 fails to provide the process which is due under the Constitution. Specifically, Appellant stresses the individual's interests and casts the assessment as extremely intrusive. As, under Act 53, the assessment is ordered upon the filing of a petition by the minor's parent or guardian alleging drug dependence, Appellant asserts that the statute on its face deprives the child of fundamental rights and that, at a minimum, the minor is entitled to notice and an initial hearing to test the sufficiency of the petition prior to the initial assessment. Additionally, Appellant maintains that the United States Supreme Court's decision in *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), requires the commitment decision to involve a careful analysis of the youth's background and treatment history, as well as an examination, in order to comport with due process. Appellant argues the full and comprehensive inquiry required in *Parham* is not provided by Act 53, which allows the commitment decision to rest on an assessment triggered by a petition of untested allegations. Moreover, Appellant contends that Act 53 fails to require notice when the petition is filed, when the court orders an assessment, and when the court schedules a hearing. Related thereto, while Appellant acknowledges that Act 53 requires the appointment of counsel at the same time an assessment is ordered, it does not specifically provide for counsel to be present at the assessment or the ability to challenge the administration of the assessment. Thus, Appellant focuses upon the need for full due process protection before the assessment of the minor is ordered.

Additionally, Appellant asserts that Act 53 infringes upon an individual's right to privacy. Appellant details that the right to privacy is a fundamental right protected under both constitutions, and that the assessment constitutes a substantial invasion of privacy. Moreover, Appellant also submits, *inter alia*, that Act 53's definition of "drug dependent" is unconstitutionally vague. According to Appellant, Act 53's definition

of "drug dependent person" does not correspond to the definition of substance dependence set forth in the Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), which is a classification of mental disorders developed and published under the auspices of the American Psychiatric Association. Appellant argues that, by failing to track the DSM–IV, Act 53 allows a minor to be involuntarily committed without an appropriate medical diagnosis. Furthermore, Appellant offers that the procedures adopted by Allegheny County highlight the facial deficiencies of Act 53. Specifically, Appellant points to procedures requiring questioning of the petitioner at the time the petition is filed, the requirement that a parent or guardian serve a copy of the order upon the minor, and the prohibition against attachments being issued prior to the hearing. Appellant also contends that the judge's role as a neutral arbitrator during the hearing on the petition is compromised by Act 53's statutory scheme because the presiding judge performs both prosecutorial and adjudicatory functions at the hearing on the petition.

Finally, Appellant alleges that Act 53 was unconstitutionally applied to him with respect to the manner in which he was taken into custody, his detention in a holding cell and, subsequently, at a facility for delinquent minors, and by how he was kept in leg irons and shackles throughout the proceedings. Appellant maintains the record does not reflect that a warrant or any other such document was issued justifying his custody.[6] Appellant stresses his detention was therefore illegal, and any statements he made during that detention should have been suppressed. With respect to having been shackled during the proceedings, Appellant avers the trial court should have made an independent determination as to whether the restraints were necessary instead of blindly deferring to the sheriff's office, which indicated unrestrained subjects were contrary to its policy.

**6.** The trial court apparently believed such a document had been issued, noting in its opinion that a "body attachment order" had been issued to detain Appellant due to the concern he would flee. *See* Trial Court Opinion, 12/21/07, at 9.

In response, the Commonwealth emphasizes the complexity of the constitutional dimension of this appeal by offering that the constitutional rights of the parents are at issue as well as those of the child. As noted by the Commonwealth, both the United States Supreme Court and our Court have recognized that a parent has a fundamental right to make decisions concerning the care, custody, and control of his or her children. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Schmehl v. Wegelin*, 592 Pa. 581, 588, 927 A.2d 183, 186 (2007). Moreover, a parent has a duty to provide needed medical care for the child, especially in light of exigent or potentially life-endangering circumstances. *Prince v. Massachusetts*, 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Commonwealth v. Nixon*, 563 Pa. 425, 428–29, 761 A.2d 1151, 1153 (2000). According to the Commonwealth, Act 53 represents an effort to ensure parents' ability to act in their child's best interests when confronted with a situation in which they require the assistance of the state. Thus, the constitutional rights of the parent and the child are in tension.

The Commonwealth advocates that Act 53 properly balances the constitutional rights of the parents and the child. It argues that Act 53 is explicitly civil in nature with a focus on treatment and recovery. Thus, in the situation where evading treatment may be harmful, therapeutic concerns are ill-served by a process that is animated by the restrictive approach to due process that is characterized by criminal procedure. The Commonwealth, in asserting the constitutionality of Act 53, points to the procedure for providing involuntary mental health treatment of a minor under the MHPA and urges our adoption of the approach taken by the Superior Court.

Moreover, with respect to the specific assertion that Appellant's grandmother's Act 53 petition was insufficient, the Commonwealth points out that the petition was made under penalty of unsworn falsification to authorities, 18 Pa.C.S.A. § 4904, and that it set forth sufficient grounds to require an assessment. Concerning the argument that Appellant did not have the benefit of counsel during the pre-hearing assessment, the Commonwealth highlights that a medical assessment is not a

police interrogation as in a criminal case. In essence, the Commonwealth submits that Appellant's grandmother enabled Appellant, her grandchild, "to 'see someone,' so to speak, who was a qualified professional, about his drug problem, in order to see if he indeed had a serious problem, needed treatment for it and needed to go to [a] facility to get it." Commonwealth's Brief at 24. As an assessment is essentially a medical proceeding, the Commonwealth maintains that counsel had no role to play at that preliminary stage.

Finally, the Commonwealth asserts the Superior Court properly determined Appellant was not deprived of substantive due process rights by virtue of having been handcuffed and shackled during the Act 53 hearing. This treatment, in and of itself, did not violate the Constitution, nor did it interfere with Appellant's right to counsel, according to the Commonwealth. As the Superior Court explained, Appellant was not before a jury and there is no reason to presume that a seasoned and well-regarded juvenile court trial judge was prejudiced by seeing Appellant in restraints. Moreover, Appellant was confined by these restraints for a relatively brief period of time and the trial judge specifically considered whether the restraints prevented Appellant from communicating with counsel, and concluded they did not interfere with that relationship. Thus, the Commonwealth asks that we affirm the unanimous decision of the Superior Court.

Before addressing the merits of the issues raised by Appellant, we first must determine which issues were preserved, and, thus, are properly before us. The Commonwealth argues that Appellant has waived certain challenges to Act 53. Moreover, according to the Commonwealth, Appellant has also failed to present claims regarding relief under the Pennsylvania Constitution as he has not engaged in an *Edmunds* analysis. *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991) (setting forth the suggested four-factor analysis to be used when dealing with issues implicating our Commonwealth's Constitution). Therefore, according to the Commonwealth, only two issues are properly before our Court: (1) whether Act 53 is unconstitutional under the feder-

al Constitution on its face; and (2) whether Appellant's constitutional right to due process was violated because he was handcuffed and shackled during the hearing and because his right to counsel was violated by the possibility posed by these restraints to impair his ability to communicate with counsel.

The Superior Court concluded certain issues were not raised during or before the Act 53 hearing, and, thus, were waived. *In the Interest of: F.C.*, 966 A.2d at 1131 n. 1 (Pa.Super.2009). Specifically, the Superior Court found to be waived legal theories regarding whether Act 53 is unconstitutionally vague; whether it compromises the neutrality of the court; whether it impermissibly denies a minor the opportunity to offer evidence or adequately challenge evidence at a hearing; whether it is narrowly tailored to withstand constitutional scrutiny; and whether it is unconstitutional because it does not require the minimum confinement necessary to effectuate treatment. *Id.*

 Issue preservation is foundational to proper appellate review. Our rules of appellate procedure mandate that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. *Lincoln Philadelphia Realty Assoc. v. Bd. or Revision of Taxes of Philadelphia*, 563 Pa. 189, 203, 758 A.2d 1178, 1186 (2000). This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible. *Wing v. Com. Unemployment Comp. Bd. of Review*, 496 Pa. 113, 117, 436 A.2d 179, 181 (1981). Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. See generally *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 258–59, 322 A.2d 114, 116–17 (1974). Finally, concepts of fairness and expense to the parties are implicated as well. *Id.*

■ After review of the briefs and the record, we agree with the Superior Court and the Commonwealth that Appellant failed to raise certain issues before the juvenile court which deprived that tribunal of the opportunity to consider and rule upon them. While the nature of an Act 53 hearing may be less formal than other settings, it is incumbent upon one raising the specter that a statute is unconstitutional to state, at least in somewhat express terms, the specific constitutional grounds upon which the challenger is basing its attack on the legislation. Therefore, to the extent Appellant raises these issues in his brief to our Court, we find Appellant waived: his contentions regarding void for vagueness; the mixing of prosecutorial and adjudicative functions; whether Act 53 impermissibly denies a minor the opportunity to offer evidence or adequately challenge evidence at a hearing; whether Act 53 is narrowly tailored to withstand constitutional scrutiny; and whether Act 53 is unconstitutional because it does not require the minimum confinement necessary to effectuate treatment, i.e., the failure to use the least restrictive alternatives.[7]

■ Finally, while in the headings in his brief Appellant suggests that he is raising a challenge under the Pennsylvania Constitution, he fails to cite to our Constitution or offer any argument under our organic charter. In any event, we have explained that the guarantees pursuant to the due process clause of the federal Constitution are generally coextensive with those under the Pennsylvania Constitution. *Commonwealth v. Kratsas*, 564 Pa. 36, 49 n. 5, 764 A.2d 20, 27 n. 5 (2001). As Appellant provides no reasons to support a departure from our current precedent, we find the due process rights implicated herein under our Constitution to be equal to

7. While, on July 10, 2007, Appellant filed a "Motion for Evidentiary Hearing, Nunc Pro Tunc, On Pre-hearing Custodial Detention," in which he makes a general challenge to the constitutionality of Act 53, and a specific assertion regarding vagueness, this motion was filed contemporaneously with the filing of a Notice of Appeal on July 10, 2007. Although the trial court summarily denied the motion on July 17, 2007, it nevertheless appears that the court did not have jurisdiction to act on the motion, as an appeal had been filed. *See* Pa.R.A.P. 1701(a).

those under the Fourteenth Amendment of the United States Constitution. *Id.*

Therefore, as did the Superior Court, in this appeal we only address the issues of: (1) whether Act 53 is unconstitutional on its face because the petition and assessment procedures are defective due to lack of notice, counsel participation, and an opportunity to test the allegations set forth therein; and (2) whether Appellant's due process rights were violated during the Act 53 hearing by virtue of the shackling, restraint, and detention of Appellant. Moreover, we consider these issues only under our federal Constitution.

█ Having resolved these threshold matters, we next turn to Appellant's facial challenge to Act 53 under the Due Process Clause of the United States Constitution.[8] Our legislature has recognized that drug and alcohol abuse and dependence constitutes a major health and economic problem facing the Commonwealth. *See* 71 P.S. § 1690.109. In 1972, the General Assembly enacted the Drug and Alcohol Abuse and Control Act to address the challenges drug and alcohol abuse and dependence pose to our citizens. Specifically, the statute, *inter alia,* created an Advisory Council to assist the Department of Health to control, prevent, intervene, treat, rehabilitate, research, and educate regarding drug and alcohol abuse and dependence problems. 71 P.S. § 1690.104. Consistent therewith, the Act expressly addressed the problem of child drug and alcohol abuse and spoke to methods to provide treatment. For example, the statute entitles a minor to request medical care and counseling related to diagnosis and treatment, as if the minor had achieved the age of majority. Thus, a child cannot be denied treatment if he or she seeks it. 71 P.S. § 1690.112. Similarly, the legislation also recognizes the right of a parent or guardian to require a child to receive drug and alcohol treatment for his or her dependence.

8. As a facial challenge to the constitutionality of a statute raises a question of law, our standard of review is *de novo,* and our scope of review is plenary. *Ario v. Ingram Micro, Inc.,* 600 Pa. 305, 315, 965 A.2d 1194, 1200 (2009) (citing *Buffalo Twp. v. Jones,* 571 Pa. 637, 645 n. 4, 813 A.2d 659, 664 n. 4 (2002)).

Specifically, Section 1690.112a sets forth a detailed process by which parents or guardians of minors may seek assistance to require treatment for their drug-dependent children:

(a) A parent or legal guardian who has legal or physical custody of a minor may petition the court of common pleas of the judicial district where the minor is domiciled for commitment of the minor to involuntary drug and alcohol treatment services, including inpatient services, if the minor is incapable of accepting or unwilling to accept voluntary treatment. The petition shall set forth sufficient facts and good reason for the commitment. Such matters shall be heard by the division or a judge of the court assigned to conduct proceedings under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), involving children who have been alleged to be dependent or delinquent.

(b) Upon petition pursuant to subsection (a), the court:

(1) Shall appoint counsel for the minor.

(2) Shall order a minor who is alleged to have a dependency on drugs or alcohol to undergo a drug and alcohol assessment performed by a psychiatrist, a licensed psychologist with specific training in drug and alcohol assessment and treatment or a certified addiction counselor. Such assessment shall include a recommended level of care and length of treatment. Assessments completed by certified addiction counselors shall be based on the Department of Health approved drug and alcohol level of care criteria and shall be reviewed by a case management supervisor in a single county authority.

The court shall hear the testimony of the persons performing the assessment under this subsection at the hearing on the petition for involuntary commitment.

(c) Based on the assessment defined in subsection (b), the court may order the minor committed to involuntary drug and alcohol treatment, including inpatient services, for up to forty-five days if all of the following apply:

(1) The court finds by clear and convincing evidence that: (i) the minor is a drug-dependent person; and (ii)

the minor is incapable of accepting or unwilling to accept voluntary treatment services.

(2) The court finds that the minor will benefit from involuntary treatment services.

(3) Where the court decision is inconsistent with the level of care and length of treatment recommended by the assessment, the court shall set forth in its order a statement of facts and reasons for its disposition.

(d) A minor ordered to undergo treatment due to a determination pursuant to subsection (c) shall remain under the treatment designated by the court for a period of forty-five days unless sooner discharged. Prior to the end of the forty-five-day period, the court shall conduct a review hearing in accordance with subsection (c) for the purpose of determining whether further treatment is necessary. If the court determines that further treatment is needed, the court may order the minor recommitted to services for an additional period of treatment not to exceed forty-five days unless sooner discharged. The court may continue the minor in treatment for successive forty-five-day periods pursuant to determinations that the minor will benefit from services for an additional forty-five days.

71 P.S. § 1690.112a. Thus, we echo the lower tribunals' characterization of Act 53 as a civil statute whose purpose is to aid parents and guardians in facilitating treatment for their substance addicted dependent minors.

When we consider such challenges to a legislative enactment, we presume the statute to be constitutional and will only invalidate the legislation as unconstitutional if it "clearly, palpably, and plainly violates constitutional rights." *Commonwealth v. Ludwig*, 583 Pa. 6, 15, 874 A.2d 623, 628 (2005). Related thereto, courts have the duty to avoid constitutional difficulties, if possible, by construing statutes in a constitutional manner. *Id.* (citing *Harrington v. Dept. of Trans., Bureau of Driver Licensing*, 563 Pa. 565, 567, 763 A.2d 386, 393 (2000)). Consequently, a party challenging a statute's constitutionality bears a heavy burden of persuasion. It is with this strong presumption of the validity of the

legislation when subject to constitutional challenge that we turn to Appellant's due process challenges.

 The Fourteenth Amendment to the United States Constitution has been interpreted to guarantee persons procedural fairness in matters affecting life, liberty, or property. U.S. Const. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."). It is now firmly established that minors are persons for purposes of constitutional due process protections. More specifically, minors have a substantial liberty interest in not being confined unnecessarily for medical treatment and the state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment. *Parham*, 442 U.S. at 600, 99 S.Ct. 2493. For purposes of this appeal, it is not contested by the parties that involuntarily requiring a minor to receive drug therapy implicates to some degree the child's liberty interest. Therefore, we find that Appellant, as a minor, enjoys a liberty interest protected by due process concerns that are implicated by Act 53. We note, however, that a minor's constitutional rights are generally limited by the state's special interests in guiding children's lives, and by traditional state deference to parental autonomy in child rearing. Thus, constitutional protections do not necessarily apply with equal force to children and adults. *See, e.g., Bellotti v. Baird*, 443 U.S. 622, 635–39, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing."). Having found that minors enjoy constitutional due process protections in this setting, we turn to the often difficult question of what process is due.

 Due process is a flexible concept and calls for such procedural protections as the particular circumstances require. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976), set forth considerations which must be balanced in determining the procedures due in a given situation: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* at 335, 96 S.Ct. 893.

The United States Supreme Court in *Parham, supra,* applied this construct when faced with the complex question of what process is due a minor child when a parent seeks to have that child committed to a state-operated mental health facility. Specifically, the Court addressed a constitutional challenge to a Georgia statutory procedure for the "voluntary" commitment of minors to a public psychiatric facility by their parents or by the state acting *in loco parentis.*[9]

In *Parham,* institutionalized minors challenged a Georgia statute allowing parents, guardians, or the state to commit persons under the age of 18 to mental hospitals. The statute allowed the minors no voice in the commitment decision. Both of the subject youths had been committed for over five years, and one had been committed because his parents did not want to care for him. The minors filed a class action suit challenging the Georgia mental health statutory scheme, alleging that they were denied liberty without due process of law. Under the Georgia mental health statute, upon application by the parent or guardian for hospitalization of their child, the superintendent of a hospital was given the power to admit temporarily the child for "observation and diagnosis." *Id.* at 590–91, 99 S.Ct. 2493. After observation, if the superintendent found evidence of mental illness and that the child was suitable for

9. While the type of commitment at issue in *Parham* was described as "voluntary," the term focused upon parental consent. James Kevin Walding, *What Ever Happened to Parham and Institutionalized Juveniles: Do Minors Have Procedural Rights in the Civil Commitment Area?* 14 Law and Psychology Review 281, 283 (1990). We recognize that this is somewhat of a misnomer at least from the perspective of the child.

treatment at the hospital, the child could be admitted for such periods and under such conditions as provided by law. *Id.* at 591, 99 S.Ct. 2493. Georgia's mental health statute did provide that any child hospitalized for more than five days could be discharged at the request of a parent or guardian and that a superintendent had an affirmative duty to release any child who had recovered. *Id.*

A three-judge federal district court ruled in favor of the minors, determining that commitment under the statute deprived the children of their liberty and that due process required at least the right, after notice, to be heard before an impartial tribunal. *Id.* at 597, 99 S.Ct. 2493. After finding the Georgia scheme unconstitutional, the court ordered the state to restructure its mental health system to allow for procedural protections.

On appeal, the United States Supreme Court declined to provide extensive due process protections in the context of a collaborative decision by parents and medical professionals to admit children to inpatient facilities, and held that no formal hearing was necessary, but that the determination of a medical professional employed by the admitting facility as to the child's need for treatment would protect sufficiently against the "risk of error inherent in the parental decision to have a child institutionalized for mental health care." *Id.* at 606, 99 S.Ct. 2493. Thus, the Court found that the use of minimal informal procedures was sufficient to protect the child's liberty interest in the context of an involuntary commitment for medical treatment.

In employing the balancing test set forth in *Mathews, supra,* the Court first recognized that a child has a protectable liberty interest in not being confined unnecessarily for medical treatment as well as in improper labeling. *Id.* at 601, 99 S.Ct. 2493. The Court, however, made it eminently clear that the question of the child's due process rights was inextricably linked to those of the parent or guardian. In embracing the notion of broad parental authority over minor children in analyzing the complex relationship among parents, minor children, and the state, the Court opined:

Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children.... The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

*Id.* at 602, 99 S.Ct. 2493.

Thus, the Court placed particular reliance on the fact that the procedure was coupled with the parents' presumed exercise of their right and duty to act in the best interest of their children. Indeed, the Court analogized a parent seeking involuntary commitment for treatment to other medical decisions made by a parent: "The same characterizations can be made for a tonsillectomy, appendectomy, or other medical procedure. Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments." *Id.* at 603, 99 S.Ct. 2493. While noting that the parental decision to commit their child is not absolute and unreviewable, the Court concluded that parents "retain a substantial, if not dominant, role in that decision, absent a finding of neglect or abuse, and that the traditional presumption that the parents act in the best interests of their child should apply." *Id.* at 604, 99 S.Ct. 2493.

Turning to the state's interest, the high Court reasoned that the government has a significant interest in confining the use of its costly mental health facilities to cases of genuine need and stressed the weighty interest of the state in not imposing unnecessary procedural obstacles that would discourage children in need or their families from seeking necessary psychiatric assistance. According to the Supreme Court, the *parens patriae* interest of the state in assisting parents and guardians to care for the mental health of their children could not be fulfilled if the admission process was "too onerous, too embarrassing, or too contentious." *Id.* at 605, 99 S.Ct. 2493.

Finally, the court considered what process protects the child's constitutional rights without undercutting parental authority or the legitimate interests of the state. The Court concluded that procedural due process is satisfied merely by a properly filed application by the parent or guardian and an inquiry "by a 'neutral factfinder' to determine whether the statutory requirements for admission are satisfied." *Id.* at 606, 99 S.Ct. 2493. Elaborating on the second requirement, the Court stated that a staff physician is free to perform an independent evaluation of the child's condition and need for treatment rather than a judge or administrative personnel. Moreover, the Court explained that it is not necessary that this fact finder conduct a hearing, formal or otherwise, as long as the inquiry "carefully probe[s] the child's background using all available sources, including, but not limited to, parents, schools, and other social agencies. Of course, the review must also include an interview with the child." *Id.* at 607, 99 S.Ct. 2493.

Furthermore, with respect to the significant issue of an adversarial hearing that is implicated in this appeal, the Court found the probative value of the additional safeguard of an adversarial hearing to be slight. Rejecting the argument of the need for such a hearing, the Court opined that "the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may well be more illusory than real." *Id.* at 609, 99 S.Ct. 2493. Instead of an additional safeguard, the high Court observed that the adversarial intrusion might very well prove counterproductive to the minor. Indeed, the Court emphasized the superior status of professionals to render a medical judgment over judges or administrative hearing officers. *Id.* at 607, 99 S.Ct. 2493.[10]

In sum, the Supreme Court held that—in view of the liberty interest of the children in not being unnecessarily confined;

10. Finally, the Court required only that a committed child's continuing need for treatment "be reviewed periodically by a similarly independent procedure." *Id.* at 607, 99 S.Ct. 2493. Again, the Court suggested that

the rights and obligations of parents in acting for their child; the state's obligation and interest regarding the operation of its mental health care facilities and not imposing unnecessary procedural obstacles to medical treatment; and the risk of error inherent in the commitment decision—due process did not require a formal or quasi-formal pre-confinement hearing on the propriety of commitment when parents voluntarily seek to admit their child. Thus, as noted above, due process requires only that a "neutral factfinder" conduct an inquiry to determine whether statutory admission requirements were satisfied. *Id.* at 606, 99 S.Ct. 2493.[11]

We find the United States Supreme Court's decision in *Parham*, while not identical to the issue before us, to be

in the absence of the requirement of a formal or quasi-formal hearing, both hospital oversight and continued parental supervision are necessary safeguards against the risk of erroneous commitment of minors. Although the *Parham* Court recognized the necessity of an independent and periodic procedure by which to gauge a child's need for continued hospitalization, the Court stopped short of prescribing appropriate procedures. *Id.* at 607 n. 15, 99 S.Ct. 2493.

11. In an appeal consolidated with *Parham* arising from our Commonwealth, *Secretary of Public Welfare of Pennsylvania v. Institutionalized Juveniles*, 442 U.S. 640, 99 S.Ct. 2523, 61 L.Ed.2d 142 (1979), a federal district court addressed a challenge to the MHPA and the Mental Health and Mental Retardation Act, 50 P.S. § 4101 *et seq.*, concerning the institutionalization of mentally ill and mentally retarded minors. The lower federal court ruled the statute unconstitutional. Specifically, the district court determined that only a formal adversarial hearing would provide due process protections and that the juveniles were entitled to, *inter alia*, 48–hour prior notice of any hearing; representation by counsel at all significant stages of the commitment process; the right to confront and cross-examine witnesses during the hearings; the use of a "clear and convincing evidence" standard in determining the minor's need for treatment; a probable cause hearing within 72 hours of detention; and a post-commitment hearing within two weeks of detention. Referring to *Parham*, the high Court reversed the lower tribunal and determined that, as the statute required an examination by mental health professionals concerned with whether the child needs and can benefit from institutional care, that such professionals engaged in a full background history from all available sources, if such professionals conclude that institutional care is not in the best interests of the child, it must refuse the child's admission, and that the statute required the child's condition be reviewed periodically, it satisfied the criteria in *Parham*. Thus, the Court reversed the lower court's order finding the Pennsylvania statute unconstitutional.

sufficiently analogous to guide our inquiry regarding the constitutionality of Act 53. Applying the *Parham* construct, and the conclusions reached therein regarding minimally required due process protections to Appellant's facial challenge to Act 53, we conclude that Act 53 provides sufficient protection to pass constitutional muster.

First, as a general matter, we note that our due process analysis is informed by the recognition that Act 53 is not a delinquency statute or a criminal statute. It is civil in nature, and its purpose is the treatment of drug or alcohol dependent children, not their punishment. As the *Parham* Court recognized, the issues of civil commitment "are essentially medical in character." *Id.* at 609, 99 S.Ct. 2493. Thus, we offer as a general proposition that involuntary commitment for therapeutic purposes does not need to mirror the procedures for a criminal trial to pass constitutional challenge. Related thereto, we are mindful that the process to be accorded to minors needs to be flexible and based upon common sense and the needs of a particular situation. *See Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593.

Turning to the competing interests of minor, parent, and state, we initially note that it is not disputed that a minor enjoys constitutional protections in this setting. Yet, consistent with *Parham*, the rights of a minor are limited by traditional state deference to parental autonomy in childrearing, as well as the state's special interest in guiding children's lives. Even more precisely, at least in this context, the fundamental right of a parent or guardian to care for his or her child, as well as the state's *parens patriae* power to care for its citizens, are implicated. Indeed, guided by the *Parham* Court's focus on the right of the parent in this context, and its presumption that a parent will act in the best interest of his or her child, we find the right of the parent to make decisions for the care, custody, and control of his or her child is paramount.

As to his specific challenges, Appellant contends that the untested and conclusory petition, filed by C.K. to initiate the Act 53 process, is insufficient. Furthermore, according to

Appellant, he is entitled to some type of hearing prior to the ordering of an assessment. Related thereto, Appellant argues that he is entitled to notice and counsel at his assessment, and the ability to challenge the administration of the assessment.

Appellant discounts the teachings of *Parham* and fails to appreciate that Act 53 proceedings concern minors and are therapeutic in nature. The *Parham* Court emphasized that, while a minor enjoyed certain protections, the significant right of the parent or guardian to make decisions regarding care is paramount. Moreover, it is presumed, in the absence of neglect or abuse, that a parent or guardian acts in the best interest of his or her child. Therefore, the filing of a petition to initiate the Act 53 process, signed by a parent or guardian setting forth facts and good reason for treatment, and subject to penalty of unsworn falsification to authorities, 18 Pa.C.S.A. § 4904, renders sufficient protection to the minor with respect to this simple triggering of the assessment process. As we noted in the context of involuntary treatment under the MHPA, such a petition is "a warrant to take [a child] to the doctor, not to take [a child] to jail." *J.M.,* 556 Pa. at 75, 726 A.2d at 1047.

Similarly, the Court in *Parham* reasoned that minimal due process protections did not require an adversarial hearing before commitment for treatment, opining that such a confrontational proceeding, in what essentially is a medical determination, will undermine the purpose of the assessment. The *Parham* Court made manifest that such a medical diagnostic procedure is not required to be judicial or adversarial in nature, and that the decision should represent the independent judgment of what the child requires based upon all sources of information traditionally relied upon by medical professionals. Here, an assessment regarding inpatient treatment is made by a psychiatrist, a licensed psychologist with specific training in drug and alcohol assessment and treatment, or a certified addiction counselor. Moreover, unlike the process at issue in *Parham,* the assessment *sub judice* is not determinative, but, rather, is used in a subsequent formal adversarial proceeding

to determine whether inpatient treatment is appropriate. Thus, we find that an assessment rendered by these statutorily-prescribed professionals satisfies *Parham's* requirement of a decision made by appropriate medical personnel. Additionally, because only an informal determination regarding the necessity of treatment is required for purposes of due process, we reject Appellant's assertions that there must be notice and counsel at the assessment and the ability to challenge the administration of the assessment. These formalities urged by Appellant, which are more properly found in criminal proceedings, are in direct conflict with the teachings of *Parham.* Again, we underscore that the proceedings involve a minor and are civil and therapeutic in nature—for due process purposes, the assessment cannot be characterized as an interrogation or criminal detention.

As to the hearing itself, we find that the protections provided by Act 53 at the hearing to determine the propriety of treatment meet the minimum protections mandated by our federal Constitution. At the formal hearing, a neutral judge considers testimony regarding the propriety of involuntary treatment. The minor's counsel is permitted to cross-examine witnesses. If, by clear and convincing evidence, the judge finds that the child is drug dependent, incapable of accepting or unwilling to accept voluntary treatment, and will benefit from involuntary treatment, the judge will order treatment for a period of 45 days or less. Each additional 45–day period of treatment is to be evaluated after a review hearing with the same safeguards as noted above. Due process protections are to be flexible, fair, and grounded in common sense. We stress that we are dealing with a process in which a parent or guardian is seeking medical treatment for their child. This statute is civil in nature and involves therapeutic treatment for a brief duration—as well as the hope of recovery and a brighter future for the child. In sum, we conclude that those aspects of the Act 53 process challenged here comport with the minimal due process protections required by the Fourteenth Amendment to the Constitution, as informed by the

United States Supreme Court's decision in *Parham*.[12]

Finally, the parties, as well as the courts below, looked to the MHPA for guidance in analyzing Appellant's constitutional challenge. We note that, while a comparison between similar statutes may certainly be a useful tool to consider the protections due in this situation, we agree with Appellant that the constitutionality of Act 53 rises or falls on an analysis of that statute itself, which, unlike the MHPA, applies solely to parents and guardians and their children. Moreover, as explained above, we believe that it is the analysis set forth in the United States Supreme Court's decision in *Parham* resolving a similar due process challenge that is of greater relevance in determining whether Act 53 is inconsistent with the protections required by the federal Constitution. Finally, Appellant agrees that certain aspects of the MHPA provide greater protections for individuals subject to that statute than those set forth under Act 53, and, in addition, points to statutes from other states providing for involuntary commitment for substance abuse treatment for minors which provide greater protections. Appellant's Brief at 10 n. 11. Similarly, while not the subject of this appeal, Appellant points to additional procedures implemented by the Allegheny Court of Common Pleas concerning Act 53 proceedings which offer extra protection to minors.[13] We only consider in this appeal, however,

12. Here, as noted above, Appellant was represented by counsel at the hearing. As required by Act 53, Morgano, the certified addiction counselor, testified as to her assessment of Appellant. She testified that Appellant had used drugs on a daily basis for over a year, had a history of mental health treatment as an outpatient, had been truant, had run away from home, and had stolen money from his grandmother, who found him difficult to control. Morgano was subjected to cross-examination by Appellant's counsel. Thereafter, the juvenile court entered an order at the conclusion of the proceedings, finding by clear and convincing evidence that Appellant should be committed for inpatient drug abuse therapy for a statutorily-limited period of time—45 days. A subsequent follow-up review contained the same procedural safeguards as the initial hearing.

13. Specifically, we take notice that the Act 53 procedures provided by the Court of Common Pleas of Allegheny County include, *inter alia*, mandating that a motions judge question the petitioner at the time of the filing of the petition to ensure an adequate basis for the issuance of the preliminary order and scheduling the case for hearing; requiring

whether Act 53 provides sufficient minimum protections to pass constitutional challenge pursuant to the Due Process Clause of the United States Constitution. Moreover, we uphold the constitutionality of a statute unless it "clearly, palpably, and plainly violates constitutional rights." *Ludwig*, 583 Pa. at 15, 874 A.2d at 628. Therefore, while the provision of additional protections for minors as exemplified in other statutes and in Allegheny County may be salutary, they do not render Act 53 itself unconstitutional. In this light, Appellant's argument for additional protections is more properly made to the General Assembly.

The United States Supreme Court has held that a child has no constitutional right to a formal hearing when a parent or guardian believes it prudent to obtain needed medical treatment for their child on an involuntary basis, but that minimal informal procedures are sufficient to protect the child's liberty interest. The provisions set forth in Act 53—which provide for a petition by a parent or guardian, an assessment by a medical professional, a formal hearing prior to commitment to a facility for drug and alcohol therapy, which includes the right to counsel, testimony before a judge to establish the propriety of commitment by clear and convincing evidence, the cross-examination of witnesses, and periodic review embracing the same protections every 45 days—go beyond the minimum process that is due to pass constitutional muster. We find, for the reasons set forth above, the procedures set forth in Act 53, on their face, strike an appropriate balance between a minor's right to not be confined unnecessarily for medical treatment, his or her parent or guardian's right to make decisions concerning the care, custody, and control of their children, and the state's interest in both using its resources appropriately and not imposing unnecessary procedural obstacles that would discourage children in need or their families from seeking necessary medical assistance. Thus, we hold that Act 53 does

the petitioner to serve a copy of the preliminary order upon the minor; providing a copy of the petition to counsel; requiring the petitioner to provide the minor notice of the hearing; and the prohibition of attachments being issued prior to the hearing date and time. *See* New Procedures for Act 53—Involuntary Commitment for Drug and Alcohol Treatment Matters.

not violate the due process protections required by the Fourteenth Amendment to the United States Constitution.

Next, we consider whether Appellant's due process rights were violated by virtue of his shackling, restraint, and detention.[14] As noted by the Superior Court, these arguments do not involve Act 53, as the statute does not require that the minor be restrained. Rather, these contentions go to the procedures employed by the deputy sheriffs and permitted by the juvenile court. *In the Interest of: F.C.*, 966 A.2d at 1138 n. 3.

With respect to Appellant's restraints during the hearing, Appellant argues that the mere wearing of restraint is presumptively prejudicial unless justified by an essential state interest. In support thereof, Appellant cites *Deck v. Missouri*, 544 U.S. 622, 628, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (recognizing that during a trial's guilt phase, "a criminal defendant has a right to remain free of physical restraints that are visible to the jury"). Furthermore, Appellant's counsel objected to the use of restraints on the basis that it interfered with his ability to communicate with Appellant. According to Appellant, the juvenile court judge prejudged Appellant as dangerous and a flight risk and failed to make an individualized finding of such risks. Thus, Appellant maintains that, by shackling him, he was prejudiced and the rights and therapeutic goals of Act 53 were compromised.

14. Appellant maintains that prior to the hearing he was taken by law enforcement officers without notice and without a document justifying this action. Appellant asserts that there was no attachment order or warrant in the record and the trial court was incorrect in stating that a body attachment order was issued due to concerns that Appellant's grandmother reported that Appellant may flee. After the Act 53 hearing, Appellant asserts that he was held at a facility for delinquent or adjudicated youth, and then transported in restraints to the drug abuse treatment facility where he underwent treatment. The Superior Court did not address this issue. Before us, the Commonwealth asserts that, for this reason, it should not constitute part of our current review. Our independent review of Appellant's brief to the Superior Court reveals that Appellant limited his argument regarding improper restraint to that which occurred during the Act 53 hearing and, while mentioning his restraint prior to the hearing, failed to offer any discussion that this was a violation of due process. Therefore, we find this aspect of Appellant's argument to be waived. Pa.R.A.P. 302(a).

The Superior Court noted that due process guarantees criminal defendants the right to appear in court free of restraints, in part, due to the risk of prejudicing the defendant in the mind of the jury. Yet, at the trial court's discretion, a defendant may be placed in restraints to prevent escape, to protect individuals in the court room, and to maintain courtroom order. Here, the Act 53 hearing did not involve a jury, but a judge. The Superior Court opined there is no reason to believe that the judge's initial observation of Appellant in restraints rendered the judge incapable of adjudicating the matter fairly or that the judge was biased by Appellant being restrained. Moreover, the Superior Court noted that the juvenile court judge believed the hearing was only to last five to ten minutes, and that Appellant was a flight risk. Finally, the court specifically considered whether or not Appellant could effectively communicate with counsel. The Superior Court reasoned that the juvenile court judge observed that Appellant was able to communicate with his counsel, and noted that Appellant failed to offer any specifics as to how the restraints did in fact interfere with his ability to communicate with counsel. Thus, the Superior Court rejected this argument.

It is well settled under common law and the Constitution that, part and parcel of the concept of a fair trial, is a defendant's right to be permitted to appear free from shackles or other physical restraint—this right, however, is not absolute. *Commonwealth v. Jasper,* 531 Pa. 1, 13, 610 A.2d 949, 955 (1992). Circumstances that have justified the use of restraint include where a defendant disrupts the proceedings, where there is a danger of escape, and where the court believes that an unrestrained defendant may attack others. *Id.* Proper security measures are within the sound discretion of the trial court, and, thus, will not be disturbed absent an abuse of that discretion. *Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973).

We find that the Superior Court properly resolved this issue, and that the juvenile court did not abuse its discretion in

requiring Appellant to remain restrained during the brief Act 53 proceedings. Significantly, in Act 53 proceedings there is no jury. The juvenile court judge believed that Appellant constituted a flight risk, and, in his discretion, found that restraints were warranted. There is absolutely no indication that the presence of restraints on Appellant biased the judge or prejudiced Appellant in any fashion. Moreover, Appellant's counsel's basis for objecting to the restraints was that it interfered with his communication with Appellant. The juvenile court judge specifically scrutinized whether or not Appellant was impeded in communicating with counsel. The judge found no validity to this contention, observing that Appellant was not hindered in any fashion from communicating with his counsel. Thus, we find that the juvenile court did not abuse its discretion in maintaining Appellant in restraints during the Act 53 hearing, and, thus, we reject Appellants constitutional challenge thereto.

For the reasons stated above, we reject Appellant's facial constitutional challenge to Act 53 and conclude that the petition and assessment procedures set forth in the statute are not infirm due to lack of notice, counsel participation, and an opportunity to test the allegations set forth therein. Furthermore, we find Appellant's due process rights were not violated during the Act 53 hearing by virtue of the shackling, restraint, and detention of Appellant. The order of the Superior Court is therefore affirmed.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justice EAKIN, BAER and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

I respectfully dissent, as I believe that Act 53, as it currently exists, does not provide sufficient procedural protections to satisfy due process.

Avoiding erroneous deprivations is one of the Due Process Clause's primary concerns. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The Superior Court, and the present majority, respectively conclude that the risk of error under Act 53 is constitutionally tolerable primarily by analogy to the Mental Health Procedures Act ("MHPA"), and to Georgia's psychiatric commitment statute evaluated in *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). I find Act 53 materially distinguishable from both enactments, and believe further that, in view of the relatively long periods of time that minors may be involuntarily confined, the statute's procedures are inadequate to guarantee a sufficiently low risk of error.

First, regarding the MHPA, although provisions that are arguably analogous to Act 53 were upheld in *In re J.M.*, 556 Pa. 63, 726 A.2d 1041 (1999), there are some notable differences between the two statutes. Under the MHPA, the initial involuntary commitment period is limited to several days, *see* 50 P.S. § 7302(d), and is based on a substantial risk that the individual will inflict serious bodily harm on himself or others. *See id.* § 7301(b); *In re J.M.*, 556 Pa. at 75 n. 9, 726 A.2d at 1048 n. 9 (highlighting the "emergency nature, therapeutic purpose and short duration of a Section 7302 warrant"). Pursuant to Act 53, the minor's initial commitment lasts up to 45 days, and is not predicated upon a risk of immediate bodily injury or death. As this Court explained in *In re Seegrist*, 517 Pa. 568, 539 A.2d 799 (1988):

It is clear that the scheme adopted [in the MHPA] envisions that more extensive procedural or "due process" protections will apply as the amount of time a person may be deprived of liberty increases above a bare minimum. For treatment not exceeding seventy-two hours, minimal procedural safeguards are available. For treatment not to exceed twenty days, a full though informal hearing must be held. For longer periods of treatment, a full-fledged adjudicatory hearing is necessary. We think that this is a perfectly appropriate statutory system that fully comports with due process.

*Id.* at 574, 539 A.2d at 802. Here, not only is the initial commitment longer than twenty days, the court can order successive 45–day confinement periods indefinitely so long as it finds that the minor will continue to benefit from inpatient services. *See* 71 P.S. § 1690.112a(d).

While I agree with the majority that a child's constitutional due process rights are not equivalent to those of an adult, the reasons for such distinction pertain to children's peculiar vulnerabilities and lack of maturity, *see* Majority Opinion at 67-69, 2 A.3d at 1214-15 (citing *Bellotti v. Baird*, 443 U.S. 622, 635–39, 99 S.Ct. 3035, 3043–46, 61 L.Ed.2d 797 (1979)), as well as the predominance of parental rights and governmental interests regarding childhood development, *see id.* at 73-76, 2 A.3d at 1218-19. Where, however, the Due Process Clause is concerned with avoiding factual error as a basis for liberty deprivations, the same standards apply equally to both adults and children, and this is true notwithstanding that the law in question may be designed to promote the minor's welfare and may be denominated as civil rather than criminal. *See In re Winship*, 397 U.S. 358, 365–68, 90 S.Ct. 1068, 1073–75, 25 L.Ed.2d 368 (1970). *See generally Reno v. Flores*, 507 U.S. 292, 318, 113 S.Ct. 1439, 1455, 123 L.Ed.2d 1 (1993) (O'Connor, J., concurring) ("Institutionalization is a decisive and unusual event. The consequences of an erroneous commitment decision are more tragic where children are involved." (internal quotation marks omitted)).

The majority relies heavily upon the Supreme Court's *Parham* decision, and I agree that that matter provides important guidance. However, *Parham* involved legislation dealing with the commitment of minors to psychiatric hospitals due to mental illness, and the Supreme Court upheld the statutory framework while emphasizing the general reliability of investigations undertaken by medical doctors. *See Parham*, 442 U.S. at 612–13, 99 S.Ct. at 2509; *id.* at 613, 99 S.Ct. at 2510 ("Georgia's statute envisions a careful diagnostic medical inquiry to be conducted by the admitting physician at each regional hospital."); *see also* Majority Opinion at 76, 2 A.3d at 1219 (adverting to *Parham's* description of "what essentially is a medical determination"). In conjunction with its focus on

the medical nature of the determinations made under the Georgia law, the Supreme Court also described the inherent, extra-legal procedural safeguards occasioned by the events that would ordinarily precede the commitment of a child:

In the typical case, the parents of a child initially conclude from the child's behavior that there is some emotional problem—in short, that "something is wrong." They may respond to the problem in various ways, but generally the first contact with the State occurs when they bring the child to be examined by a psychologist or psychiatrist at a community mental health clinic.

Most often, the examination is followed by outpatient treatment at the community clinic. In addition, the child's parents are encouraged, and sometimes required, to participate in a family therapy program to obtain a better insight into the problem. In most instances, this is all the care a child requires. However, if, after a period of outpatient care, the child's abnormal emotional condition persists, he may be referred by the local clinic staff to an affiliated regional mental hospital.

At the regional hospital an admissions team composed of a psychiatrist and at least one other mental health professional examines and interviews the child—privately in most instances. This team then examines the medical records provided by the clinic staff and interviews the parents. Based on this information, and any additional background that can be obtained, the admissions team makes a diagnosis and determines whether the child will likely benefit from institutionalized care.

*Parham*, 442 U.S. at 614–15, 99 S.Ct. at 2510.

In comparison with the above, an Act 53 drug-dependency assessment may initially be ordered based on a one-sentence unsworn petition (as it was in this case), and the dependency assessment may be grounded on a relatively short, uncounseled interview by an assessor who is not a physician.[1] *See* 71

---

1. Although Act 53 requires that the court appoint counsel for the minor, it does not specify when such appointment must be made or that counsel must be present during the minor's drug and alcohol assess-

P.S. § 1690.112a(b)(2). As noted, the court may then order confinement for up to 45 days based solely on the assessor's testimony.[2] These procedures do not require a thorough background evaluation based on such things as school and social agency records, an omission I find noteworthy in light of *Parham's* observation that, in view of the "risk of error inherent in the parental decision to have a child institutionalized for mental health care," the factfinder's inquiry "must carefully probe the child's background using all available sources, including, but not limited to, parents, schools, and other social agencies," in addition to an interview with the child. *Parham*, 442 U.S. at 606–07, 99 S.Ct. at 2506. Although drug or alcohol addiction assessments may differ from evaluations involving mental illness, these pronouncements from *Parham*, in my opinion, cast some doubt upon the adequacy of Act 53's procedural safeguards.

ment. Here, for example, the interview took place before counsel had an opportunity to consult with his client. This may be problematic because, unlike evaluations for possible mental illness, Act 53 assessments require an individual, acting as an agent for the state, to question the minor concerning alleged illegal conduct, a process that could implicate distinct constitutional limitations, particularly if counsel is absent during the questioning.

In seeking review, Appellant raised this issue by asserting that any such admissions might lead to the initiation of a criminal or delinquency prosecution with no protection against the use of the minor's own statements in the prosecution. The issue, moreover, is fairly subsumed within this Court's allocatur grant, which asks generally whether Act 53 violates the Fourteenth Amendment's Due Process Clause. *See In re F.C.*, 601 Pa. 573, 975 A.2d 1082 (2009) (*per curiam*). *See generally Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964) (making the privilege against self-incrimination applicable to the states through the Fourteenth Amendment). However, Appellant does not pursue the question in his merits brief to this Court, and thus, it is waived.

2. The assessor may retain an interest in having the minor admitted, as she may be a staff member at the treatment facility where the minor is ultimately confined. *See* N.T. June 12, 2007, at 2, *reproduced* in R.R. 20a (reflecting that the assessor in the present case was employed by the facility where Appellant was ultimately confined). The Supreme Court in *Parham* adverted to this possibility, but deemed it unproblematic in view of the district court's finding that the hospital staff in Georgia acted conscientiously. *See Parham*, 442 U.S. at 616, 99 S.Ct. at 2511.

The Commonwealth undoubtedly has an important objective to ensure that minors receive treatment for drug and alcohol abuse, and the minor's parents retain a recognized interest in ensuring that their drug-dependent children obtain treatment, as cogently articulated by the Attorney General, *see* Brief for Appellee at 16–22, and the majority, *see* Majority Opinion at 66-72, 2 A.3d at 1213-17. On balance, however, I would find that the Fourteenth Amendment entitles a minor to greater due process protections than those supplied by Act 53 before the state may institutionalize him involuntarily for 45 days.[3] I am not insensitive to the possibility that family ties may be strained by pitting children against their parents or guardians as adversaries in a judicial setting, *see Parham,* 442 U.S. at 610, 99 S.Ct. at 2508, and hence, I would not conclude that adversarial testing of the petitioner's veracity or motives is constitutionally required—particularly as the petition itself becomes largely irrelevant once an assessment is ordered. I would hold, though, that, in view of the substantial involuntary commitment periods authorized by Act 53, and the possibility of erroneous deprivations due to the brevity of the assessment process, the Fourteenth Amendment entitles a minor to a more thorough evaluation concerning the need for inpatient treatment than the relatively scanty procedures outlined in Act 53. For example, I would be more comfortable with a legislative scheme under which the assessor is expressly required to use other sources besides an interview with the child,[4] and/or the final recommendation concerning treatment

3. In my opinion, the circumstances surrounding the underlying commitment in this case illustrate the need for such additional protections. Here, a fourteen-year-old boy was subjected, without any prior notice, to arrest and shackling at his home by multiple law enforcement agents, who then transported him to the courthouse where he remained shackled throughout the entire evaluative process, including the court hearing. All of this occurred without any criminal charges having been lodged. Although I agree with the majority to the degree it concludes that the judge was not likely prejudiced in his fact-finding role, the fact that Act 53 appears to allow for such heavy-handed actions against minors within a purely civil context supports the conclusion that its due process protections are inadequate to pass constitutional scrutiny.

4. Such sources could include, for example, records from the social services agency and an interview with the Act 53 petitioner. It appears

88

is made by a physician, so as to bring its reliability within the parameters expounded by the Supreme Court in *Parham.*

that, in this case, the assessor did have access to some of these sources. *See* N.T. June 12, 2007, at 22–27, *reproduced in* R.R. 40a–45a (reflecting the testimony of the assessor regarding the information she obtained concerning Appellant's drug use). However, that fact is irrelevant to the facial constitutional analysis of Act 53, which does not require that information-gathering step.