J-S38033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DARYL CARTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BAR GAME I, LLC; BARON D. | : | |
| HERDER; DEBORAH HERDER;  LEVEL | : | |
| 38 BAR & GRILL; RONG CHEN; D | : | |
| LINE SECURITY, LLC; JOHN DOE; | : | |
| AND ABC CORPORATION | : | No. 1338 EDA 2022 |

Appeal from the Order Entered April 14, 2022,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  210702133.

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　　**FILED FEBRUARY 7, 2023**

This case arises from a 2019 shooting incident that occurred outside Level 38 Bar & Grill in Philadelphia.  The victim, Daryl Carter, sued Bar Game I, LLC; Baron D. Herder; Deborah Herder; Level 38 Bar & Grill; Rong Chen; D Line Security, LLC; John Doe; and ABC Corporation.  Mr. Carter obtained default judgments against Bar Game I, the Herders, Level 38, and Rong Chen ("Judgment Debtors").  The Judgment Debtors appeal, as of right, from the order denying their petition to strike or to open those default judgments.  For the reasons below, we partially reverse and partially affirm.

According to Mr. Carter's complaint, filed on July 26, 2021, Level 38 Bar & Grill is the operating name for Bar Game I, LLC, a restaurant and bar at 3800 Lancaster Ave. in Philadelphia.  Baron and Deborah Herder are "owner[s], principal[s], shareholder[s] and/or officer[s] of Bar Game I and

Level 38 . . . ." ("the Bar"). Complaint at 3, ¶¶ 5, 6. Additionally, Rong Chen is the Bar's landlord.

In his lawsuit, Mr. Carter claimed that the Judgment Debtors failed to provide reasonable security to protect him, a patron of Level 38, from John Doe, a fellow patron. When Mr. Doe opened fire at other patrons, stray bullets struck Mr. Carter as he departed the premises. *See id.* at 5-6. Mr. Carter brought counts for negligence, negligent infliction of emotion distress, and intentional infliction of emotional distress against the Judgment Debtors.

On July 28, 2021, Ms. Chen accepted service of Mr. Carter's complaint. On August 16, 2021, service also went "to **AL BROWN** as **AUTHORIZED AGENT**, who stated they are authorized to accept service for [**the Herders and the Bar**] at the address of: **3800 Lancaster Ave., Philadelphia, PA 19104** . . . ." Affidavits of Service to Level 38 Bar & Grill; Deborah Herder; Baron Herder; and Bar Game I, LLC at 1 (emphasis in original).

No defendant responded to the complaint. Thus, on August 25, 2021, Mr. Carter sent a notice of default to Ms. Chen, and, on September 8, 2021, he sent notices of default to the Bar and the Herders at the 3800 Lancaster Ave. address. The defendants still did not respond. Thus, the Office of Judicial Records of Philadelphia County entered default judgments against the Bar (on October 22, 2021) and against Ms. Chen and the Herders (on October 28, 2021).

Two months later, on January 2, 2022, Thomas W. Harrity, Esq. entered his appearance on behalf of the Judgment Debtors. Nearly six weeks passed

with no activity on the docket. Then, on February 10, 2022, the Judgment Debtors filed the "Defendants, Bar Game I, LLC; Baron D. Herder; Deborah Herder; Level 38 Bar & Grill; and Rong Chen's Petition to Strike or Open Default Judgments."

In their petition, the Judgment Debtors only raised theories to support striking of the default judgments. Moreover, they prayed for relief, as follows: "WHEREFORE, defendants, Level 38 Bar & Grill and Bar Game I, LLC; Baron D. Herder; and Deborah Herder, respectfully request that this court enter an Order *striking* the default judgments entered." Judgment Debtor's Petition to Strike the Default Judgments at 7 (emphasis added). Notably, Ms. Chen was omitted from the prayer for relief and, thus, did not seek any relief in the petition. The other Judgment Debtors asked the trial court to strike the default judgments, not to open them. Specially, the Judgment Debtors alleged that Al Brown was not their agent. *See id.* at 4, 6.

A Memorandum of Law accompanied the petition. It repeated the claim that Al Brown was not an agent of the Bar or the Herders. They also presented an argument that equity required the trial court to open the default judgments against the Bar and the Herders.

The memorandum, unverified and unsupported by affidavit, relates that, "On October 7, 2021, Mr. Herder retained the Offices of Eric D. Thomas, LLC to enter an appearance in court to defend him, as well as Bar Game I, LLC; Level 38 Bar & Grill; and his ex-wife, Deborah Herder . . . ." Memorandum of Law at 4-5. Mr. Herder believed Mr. Thomas was a Pennsylvania lawyer who

would take appropriate steps on his behalf; he therefore paid Mr. Thomas a $3,000.00 retainer fee.  ***See id.***

After several weeks in which Mr. Herder heard nothing from Mr. Thomas, another attorney investigated Eric D. Thomas, LLC.   Internet searches revealed that "Mr. Thomas was not a licensed attorney in the Commonwealth Pennsylvania but instead appeared to be posing as an attorney."  ***Id.*** at 5. After several attempts, "Mr. Herder reached Mr. Thomas and at that point demanded that he immediately refund the retainer he paid or risk reporting him to the appropriate authorities for misrepresentation and deception in offering legal services."  ***Id.***   "In late November 2021, after recovering his $3,000.00 retainer previously paid to Mr. Thomas, Mr. Herder sought the services of a competent trial lawyer to defend him in this case."  ***Id.***

Mr. Herder eventually located and retained Attorney Harrity to represent the Bar, the Herders, and Ms. Chen.  As mentioned above, Attorney Harrity entered his appearance on January 2, 2022, and he filed a Petition to Strike the Default Judgments about a month-and-a-half later.

Mr. Carter filed an Answer opposing the petition, and the Judgment Debtors filed a reply.  The trial court denied the petition on April 13, 2022. This timely appeal followed.

The Judgment Debtors raise four appellate issues.  They are:

> 1.    Did the [trial] court err when it refused to strike the default judgments entered against [the Herders] on the ground that the returns of service on them are defective on their faces?

2. Did the [trial] court err when it refused to strike default judgments entered on a complaint that asserts a claim for failure to provide security outside the premises, a cause of action that is not recognized in this Commonwealth?

3. Did the [trial] court err when it refused to open the default judgments[,] because service of process on four of the defendants was defective?

4. [Did the trial court err when it refused to open the default judgments,] because the defendants asserted valid equitable grounds for the opening of the judgments?

Judgment Debtors' Brief at 7-8. We address each issue in turn.

## 1. Petition to Strike Based on Service to the Herders

First, the Herders contend that the trial court erred, as a matter of law, by refusing to strike the default judgments against them. They argue that the returns of service against them are facially defective, "because the returns of service do not track the language of the applicable rule and are, therefore, defective." *Id.* at 18-19.

The Herders claim the affidavits of service needed to contain the phrase "office or usual place of business" to comply with the language of Pennsylvania Rule of Civil Procedure 402. In their view, the "failure of the affidavits of service to identify 3800 Lancaster Avenue, Philadelphia, PA as [their] 'office or usual place of business' is a fatal law, which should result in the judgments being stricken." *Id.* at 21. They assert this defect rendered the default judgments void *ab initio*, because it deprived the trial court of *in personam* jurisdiction over them.

- 5 -

In his brief, Mr. Carter observes that the Herders raise this claim for the first time on appeal. He also argues that the absence of the phrase "office or usual place of business" from the affidavit of return of service is not a fatal defect when read in context with the entire record. Mr. Carter believes the allegations in his complaint sufficiently establish that 3800 Lancaster Ave. was the Herders' place of business.

Before reaching the merits of this issue, we must determine whether the Herders have waived it by failing to raise the claim before the trial court. "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020). Usually, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pennsylvania Rule of Appellate Procedure 302(a).

Here, the Herders did not argue to the trial court that the affidavits of service were facially defective due to the absence of the phrase "office or usual place of business." Instead, they asserted that Al Brown was not an agent, manager, clerk, or other person in charge of the business. **See** Petition to Strike at 6. Hence, we agree with Mr. Carter that the Herders are pursuing a new legal theory on appeal.

Nevertheless, this Court has held that issue-preservation principles do not apply to petitions to strike default judgments where, as here, appellants claim that default judgments are void *ab initio*, because "a litigant may seek to strike a void judgment at any time." **Oswald v. WB Pub. Square**

***Assocs., LLC***, 80 A.3d 790, 793 n.2 (Pa. Super. 2013) (collecting cases). Consequently, we will address the merits of the Herders' first issue regarding their petition to strike the default judgment.

"An appeal regarding a petition to strike a default judgment is a question of the Pennsylvania Rules of Civil Procedure" and presents "us with questions of law." ***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1267 (2015). Therefore, "our standard of review is *de novo*, and our scope of review is plenary." ***Id.*** However, that plenary review is confined to the facts of record when the default judgment was entered, because a "petition to strike a judgment is a common-law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." ***Id.***

As such, "a petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief." ***Id.*** "A fatal defect on the face of the record denies the [office of judicial records] the authority to enter judgment." ***Id.*** Thus, if our *de novo* review reveals a fatal defect that renders the default judgments void *ab initio*, we must strike those judgments.

According to Pennsylvania Rule of Civil Procedure 405(b), the "return of service shall set forth the date, time, place and manner of service, identity of the person served and any other facts necessary for the court to determine whether proper service has been made."

Interpreting the previous rule, which was identical to Rule 405(b), the Supreme Court of Pennsylvania held "it is essential that **the return** set forth all of the necessary facts to show proper service." **Neff v. Trib. Printing Co.**, 218 A.2d 756, 758 (Pa. 1966) (emphasis added). Thus, Mr. Carter's assertion that we may rely upon the allegations of his complaint to supplement the sworn testimony of the process server in the affidavit of return of service is wrong. Instead, our scope of review for purposes of Rule 405(b) is confined to the return of service for each party.

To be effective, "[o]riginal process may be served . . . at any office or usual place of business of the defendant to his agent or the person for the time being in charge thereof." Pa.R.C.P. 402(a)(2)(iii).

The affidavits at issue identified Al Brown as the Herders' agent. Thus, they satisfy the latter part of Rule 402(a)(2)(iii), but the affidavits did not identify 3800 Lancaster Ave. as the "office or usual place of business" of either Mr. Herder or Ms. Herder. **See** Affidavits of Service to Deborah Herder and Baron Herder at 1. Therefore, on their face, the returns of service here do not contain "all of the necessary facts to show proper service." **Neff**, 218 A.2d at 758.

"The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made." **Id.** at 757. "Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter

judgment against him or her." ***Cintas Corp. v. Lee's Cleaning Servs., Inc.***, 700 A.2d 915, 917–18 (Pa. 1997).

Here, the process server offered no testimony in the four corners of his affidavits to establish that 3800 Lancaster Ave. was a proper location where the Herders could be served via an agent. Hence, we agree with the Herders that their affidavits of service are facially defective, as a matter of law.

Strictly applying the service-of-process rules, we conclude the default judgments against the Herders are fatally flawed, due to improper service. Because there was improper service of process, the Court of Common Pleas of Philadelphia County did not acquire personal jurisdiction over the Herders. ***See Cintas Corp.***, ***supra***. Thus, the office of judicial records lacked authority to enter default judgments against the Herders; those default judgments were void *ab initio*.

The first appellate issue is meritorious.

## 2.    Petition to Strike Based on Negligence Cause of Action

For their second issue, the Judgment Debtors suggest that the trial court erroneously refused to strike the default judgments, "because the complaint purports to state a cause of action unrecognized in Pennsylvania law against landowners for failure to provide security off their premises." Judgment Debtors' Brief at 23. The Judgment Debtors' fault the trial court for not addressing this argument. ***See id.*** However, the record reveals that the fault lies with the Judgment Debtors, not the trial court.

The Judgment Debtors claim to have raised this issue below and cite to the Memorandum of Law to support their assertion of issue preservation. **See id.** They are incorrect. The page of the memorandum to which they cite is their argument **to open** the default judgments, not their argument **to strike** the default judgments. The Judgment Debtors never argued to strike the judgments based on an unrecognized cause of action in either their petition or their Memorandum of Law.

The fact that the Judgment Debtors discussed the validity of their cause of action in their argument to open the default judgments did not apprise the trial court that they were also seeking to strike the judgments on the same basis. "A petition to strike a default judgment and a petition to open a default judgment are two distinct remedies, which are generally not interchangeable." **Williams v. Wade**, 704 A.2d 132, 134 (Pa. Super. 1997). The two types of petitions have different tests and different scopes and standards of review. Thus, the Judgment Debtors did not raise their second appellate issue in the trial court.

Unlike their first appellate issue, regarding facially defective service of process, the second appellate issue does not render the default judgments void *ab initio* due to lack of *in personam* jurisdiction. Instead, the Judgment Debtors ask us to strike the judgments, because a cause of action in Mr. Carters' complaint is supposedly not cognizable under Pennsylvania law.

In default-judgment cases where complaints failed to state cognizable causes of action, our precedents do not indicate that the default judgments

would be stricken, because they were void *ab initio*. Instead, this Court subsequently voided those judgments, because "the interests of justice require[d] that relief be afforded to [the] defendant . . . ." ***Rosser v. Cusani***, 97 Pa. Super. 255, 258 (1929). In these instances, the default judgment was ***voidable***, rather than ***void* ab initio**. As a result, the exception to the issue-preservation requirements in ***Oswald***, ***supra***, regarding void judgments, is inapplicable when asking a court to strike a voidable judgment.

Therefore, Rule of Appellate Procedure 302(a), dictating that issues not raised below are waived and may not be raised for the first time on appeal, applies. Because the Judgment Debtors failed to raise it below, we dismiss their second appellate issue as waived.

### 3. Petition to Open Based on Service of Process

Next, the Bar contends this Court should reverse the trial court's refusal to open the default judgments, because service of process against it was defective.[1] The Bar argues the trial court erred by failing to address its allegations of defective service of process before proceeding to the merits of its equitable argument to open the default judgment. ***See*** Judgment Debtors' Brief at 29. The Bar urges us to vacate the order and remand for a hearing on whether it authorized Al Brown to serve as its agent, in writing, pursuant to Pa.R.C.P. 424.

_____

[1] The Herders joined this appellate issue. However, because we determined that the default judgments against must be stricken due to improper service, we dismiss, as moot, this issue with respect to the Herders.

- 11 -

As mentioned above, the Judgment Debtors entitled their petition as one to strike or open the default judgments against them. However, the petition never offered any grounds to open the default judgments, and the only relief that it sought was to strike the default judgments. Also, in its Memorandum of Law, the Bar did not argue to open the default judgment based upon defective service, nor did it request a hearing on whether the Al Brown was its authorized agent. Thus, the Bar never raised this issue in either its petition or Memorandum of Law.

As the Supreme Court of Pennsylvania has said, "issue preservation is foundational to proper appellate review." *In re F.C. III*, 2 A.3d 1201, 1211 (Pa. 2010). "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." *Trigg*, 229 A.3d at 269.

The Bar did not provide the trial court with an opportunity to rule upon this basis for opening the record in the first instance. Nor did it ask the trial court for an evidentiary hearing.

Thus, we dismiss the third appellate as waived. *See* Pa.R.A.P. 302(a).

## 4. Petition to Open Based on Equitable Principals

For their fourth and final issue, the Judgment Debtors claim the "trial court erroneously denied the petition . . . to open the judgment on equitable

grounds."[2] Judgment Debtors' Brief at 41. As this framing of the issue suggests, the Judgment Debtors fail to appreciate this Court's deferential standard of review for the denial of petition to open a default judgment. They relitigate their claim that equity requires the opening of the default judgments as if our standard of review were *de novo*. It is not.

A "petition to open a default judgment is an appeal to the equitable powers of the court, and, absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal." ***Myers v. Wells Fargo Bank, N.A.***, 986 A.2d 171, 175 (Pa. Super. 2009). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will." ***Id.***

In arguing this issue, the Judgment Debtors do not allege that the trial court committed an error of law. Instead, they contend that, because they were defrauded by Mr. Thomas, "equity has the power to open the judgment, even after the 30-day period that is ordinarily considered to be 'prompt.'" Judgment Debtors' Brief at 46. Simply because equity empowers the court to grant the relief a party seeks does not mean the court is required to do so.

Critically, the Judgment Debtors do not claim that the trial court abused its discretion here. They do not identify which form of abuse of discretion the trial court committed or persuade us that such an abuse occurred.

---

[2] We dismiss this issue as moot regarding the Herders. ***See*** note 1, ***supra***.

The trial court explained its rationale for denying the Judgment Debtors equitable relief as follows:

> Pennsylvania Courts have held that to be considered prompt, a Petition to Open Judgment shall typically be filed less than one month between the entry of default judgment and the filing of a Petition to Open. ***Myers v. Wells Fargo Bank, N.A.***, 986 A.2d 171, 176 (Pa. Super. 2009). Here, default judgments were entered against [the Judgment Debtors] on October 22, 2022, and October 28, 2022, respectively, and [they] filed the instant Petition to Open Judgment on February 11, 2022. The instant Petition to Open Judgment was filed more than three months after the entry of the default judgments, and thus should not be considered prompt. ***Id.***; ***Casting Condominium Ass'n, Inc. v. Klein***, 663 A.2d 220, 222 (Pa. Super. 1995) (delay of three months between entry of default judgment and filing of Petition to Open not prompt). Therefore, [the Judgment Debtors] have not demonstrated that the subject filing was prompt, failing to satisfy the first prong in the test to open a default judgment.
>
> \*     \*     \*
>
> [The Judgment Debtors] claim that their failure to file a responsive pleading was reasonably excused because at the onset of the case, [Mr. Herder] had mistakenly hired a non-attorney to represent them. [They] claim that once it was discovered that they were being represented by a non-attorney, [the Judgment Debtors] sought and secured counsel, and then filed the instant Petition. Default judgment was taken against the Appellants on October 22, 2022, and October 28, 2022, respectively. [The Judgment Debtors] realized that they were not being represented by an attorney in mid-November. However, despite this realization, new counsel was not obtained until January 2, 2022.
>
> New counsel did not file the instant Petition to Open Judgment until over one month after he entered his appearance. Even though [the Judgment Debtors] had sufficient notice of the entrance of the default judgments,

- 14 -

> [they] delayed significantly (approximately four months) in securing new counsel and filing the subject Petition to Open. [They] provided no excuse or justification explaining these additional delays. Therefore, [their] excuse justifying their delay in filing a responsive pleading should not be considered reasonable. ***See Alba [v. Urology Assocs. of Kingston***, 598 A.2d 57, 58 (Pa. Super. 1991)].

Trial Court Opinion, 6/7/22, at 2-4 (some citations omitted).

This opinion is logical. Further, the trial court accepted the unverified, unsupported factual assertions in the Judgment Debtors' Memorandum of Law for purposes of its review. Despite giving them the benefit of every factual doubt, the trial court still found that the Judgment Debtors' delay between learning of this lawsuit and securing competent counsel and ultimately filing the Petition to Strike was unreasonable.

While another judicial mind might have reached a different conclusion as to what constituted undue delay under these circumstances, nothing in the trial court's decision is manifestly unreasonable. Reasonable minds may differ as to how and when the Judgment Debtors should have responded to the situation in which Mr. Thomas seemingly placed them.[3]

The trial court's concern about the additional, six weeks' delay between the entry of Attorney Harrity's appearance and the filing of the Petition to

---

[3] We are sympathetic to the fact that Eric D. Thomas, LLC may have tricked Mr. Herder into thinking Mr. Thomas was a licensed attorney. However, at this point, any claims against Eric D. Thomas, LLC and Mr. Thomas should be resolved in a separate suit, where the matter can be fully litigated. Also, the Judgment Debtors and their counsel may contact the appropriate authorities to report the unauthorized practice of law in this Commonwealth and the other states listed in the company's letterhead.

Strike the Default Judgments is particularly persuasive. The Judgment Debtors knew they were against a running clock to strike or to open the default judgments in early January.[4] The trial court was well within its equitable discretion to hold the Judgment Debtors accountable for that additional, inexcusable delay.

Also, the court did not misapply the equitable test for reviewing a petition to open a default judgment. Finally, the Judgment Debtors make no allegation of partiality, bias, prejudice, or ill will. Thus, the trial court did not abuse its discretion.

The fourth and final appellate issue is meritless.

Order reversed, in part – *i.e.*, default judgment against Baron D. Herder stricken; default judgment against Deborah Herder stricken. Order affirmed in all other respects. Case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023

---

[4] Best practice would have been to file the petition to strike with the entry of appearance, *i.e.*, **before** negotiating with opposing counsel. This would have eliminated the extra month-and-a-half delay between the entry of appearance and the petition's filing.